**UNITED STATES of America, Appellee,**

v.

**Randall A. TERRY, Defendant–Appellant.**

**No. 658, Docket 93–1440.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 22, 1993.

Decided Feb. 25, 1994.

Jay Alan Sekulow, Washington, D.C. (James M. Henderson, Mark N. Troobnick, Walter Weber, Washington, D.C., Thomas P.

Monaghan, New Hope, Kentucky, of counsel), for defendant-appellant.

Sanford M. Cohen, Assistant Attorney General, New York, New York (Robert Abrams, Attorney General of the State of New York, New York, New York, of counsel), for appellee.

Before: MESKILL and WALKER, Circuit Judges, and MOTLEY, District Judge.*

**WALKER, Circuit Judge:**

Defendant Randall A. Terry appeals from a judgment entered on June 14, 1993 after a bench trial in the United States District Court for the Southern District of New York (Robert J. Ward, Judge), convicting him of criminal contempt, in violation of 18 U.S.C. §§ 2(b) and 401(3), arising from his breach of the district court's July 13, 1992 preliminary injunction. *United States v. Terry*, 815 F.Supp. 728 (S.D.N.Y.1993) (*"Terry III"*).

The actions leading to the criminal contempt conviction from which this appeal was taken lay grounded in the highly charged societal debate over abortion rights. This appeal, however, is unconcerned with this debate. Rather, it is confined to the questions of whether, under the circumstances presented, one who preliminarily was enjoined by an order of the district court could freely disregard that order and whether there was error in the process that led to his conviction for criminal contempt.

The preliminary injunction was issued in connection with a suit brought in early July 1992 by the People of the State of New York, represented by New York State Attorney General Robert Abrams, against Terry, Operation Rescue National (a pro-life organization of which Terry claims to be the founder), and various other defendants. The objective of the suit was to enjoin defendants from violating various federal and state laws by blocking access to facilities that perform abortions, harassing persons entering these facilities, and interfering with the rights of delegates attending the Democratic National

---

* Honorable Constance Baker Motley, United States District Judge for the Southern District of New York, sitting by designation.

Convention. The injunction, which was issued on July 13, 1992, enjoined defendants from, *inter alia,*

> presenting or confronting either Governor Bill Clinton or Senator Albert Gore with any fetus or fetuses or fetal remains in the City of New York or elsewhere in the Southern District of New York between [12:45 p.m. on July 13, 1992] and 12:00 midnight on July 17, 1992....

It also provided that defendants:

> shall make good faith efforts to instruct all organizations and individuals they believe to be planning to participate in any of the activities enumerated in clauses (1) through (7) of the second decretal paragraph above not to engage in the proscribed activities....

After a bench trial, the district court found Terry guilty of violating the first quoted paragraph based upon evidence that, notwithstanding the paragraph's terms, he caused an associate to present then-Governor, now-President Clinton with a fetus on the morning of July 14, 1992. The court concluded that the Government failed to establish that Terry had violated the second quoted paragraph. The court sentenced Terry to five months' imprisonment and ordered a special assessment of $10.

On appeal, Terry contends: (1) that the district court violated his due process right to a disinterested prosecutor by appointing Attorney General Abrams to be the prosecutor in the criminal contempt proceeding; and (2) that his contempt conviction is invalid because the underlying injunction did not prohibit his activities and, in any event, unconstitutionally burdened his First Amendment rights. We find both contentions to be without merit.

## I. Appointment of the New York State Attorney General as Prosecutor

Terry first argues that the Attorney General should not have served as prosecutor because he was counsel of record in the underlying civil litigation and because he harbored a personal bias against Terry. We reject these arguments substantially for the reasons stated by the district court in its denial of Terry's motion to disqualify Mr. Abrams prior to trial. *United States v. Terry,* 806 F.Supp. 490 (S.D.N.Y.1992) ("*Terry II*").

### A. The Vuitton Argument

■ In arguing that the Attorney General should not have served as prosecutor because of his role in the civil litigation, Terry relies primarily on *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). *Vuitton* focused on the danger of entrusting the coercive powers of the state to counsel for a private litigant, and held that counsel for a party that is the beneficiary of a court order may not be appointed as a prosecutor in a contempt action alleging violation of that order. Unlike the usual *Vuitton* situation, this case involves the appointment of a government attorney as the contempt prosecutor. Like the United States Attorney, who was first asked by the district court to prosecute the contempt charges but declined, the Attorney General of the State of New York represents a sovereignty and is presumed to act with a sense of impartiality.

Despite this presumption, two circuits have held that *Vuitton* concerns may be implicated by appointment of a government attorney as prosecutor in a contempt proceeding. See *United States ex rel. SEC v. Carter,* 907 F.2d 484 (5th Cir.1990); *FTC v. American Nat'l Cellular,* 868 F.2d 315 (9th Cir.1989). *Carter* held that the appointment of SEC attorneys to prosecute appellants' violation of receivership injunctions entered in a suit brought by the SEC transgressed *Vuitton* principles, where the SEC attorneys who conducted the prosecution also litigated the underlying civil action and their prosecution was not supervised by the United States Attorney's Office. The court was further concerned by the prospect that the SEC attorneys had not disinterestedly pursued appellants' convictions, as evidenced by the fact that they overstated and misrepresented appellants' wrongdoing in their appellate briefs.

In *American National Cellular,* the Ninth Circuit ruled that appointment of government lawyers can lead to reversible error under *Vuitton* in certain circumstances, such

as where an attorney's involvement in the underlying civil litigation clouds his judgment while prosecuting the contempt action. The Ninth Circuit found, however, that under the facts of the case before it, the involvement of FTC attorneys in the prosecution of appellant's contempt charges did not result in reversible error. *American Nat'l Cellular*, 868 F.2d at 320. The Ninth Circuit relied on the fact that the United States Attorney participated in the contempt prosecution and that the FTC attorneys who litigated the underlying civil action were only marginally involved, if at all, in the prosecution.

We agree with the Ninth Circuit that *Vuitton* does not automatically disqualify government attorneys who bring a civil action from serving as special prosecutors in a subsequent contempt proceeding, and that where a case involves appointment of a government attorney, the court must examine the particular facts of the case to determine if reversible error has occurred. *See id.* at 319. In the present case, we conclude, based on our review of the record, that the Attorney General's involvement with the underlying civil action did not present an actual or apparent conflict of interest requiring his disqualification. Several facts are particularly relevant to our decision. First, the only financial interest the Attorney General had in the underlying civil litigation (the possibility that attorneys' fees would be paid, not to the Attorney General or his office, but to the general coffers of the State of New York) was too remote to implicate a conflict. Second, the Attorney General could not profit financially from the criminal contempt prosecution since any fine imposed would be paid to the United States and the district court determined before the prosecution began that it would not award attorneys' fees. Third, at the time of the prosecution, the civil contempt charges against Terry had been dismissed.

Fourth, and quite significant in our view, at the time of the contempt prosecution there were no ongoing activities in the underlying civil action that could cloud the Attorney General's judgment in the criminal case or exert undue pressure on Terry. Although we learned at oral argument that the district court has recently ordered the parties in the civil case to submit a schedule for completion of discovery and filing of pre-trial orders or motions for summary judgment, we do not believe this renewed activity in the civil action calls into question the Attorney General's impartiality during the prior contempt proceedings. It is undisputed that the civil case had been inactive since the time the preliminary injunction was issued until the court's recent order. The Attorney General was therefore not involved in the type of simultaneous activity that would give him an unfair advantage in either proceeding. As a final point, we conclude that the Attorney General's dual role could not have led to discovery abuse since any discovery obtained in the criminal proceeding, in which there was no grand jury, would be as readily obtainable in the underlying civil litigation.

Terry also argues that the potential for abuse with a dual role prosecutor is demonstrated by the fact that in his criminal trial, the Attorney General used materials obtained through discovery in parallel civil contempt proceedings of Terry's co-defendants. The Attorney General's concurrent prosecution of the civil and criminal contempt charges is not a concern addressed by *Vuitton*. The criminal proceeding does not involve vindication of an order issued in the civil contempt proceedings; rather, both proceedings seek vindication of the injunction issued in the underlying civil litigation. *Vuitton* does not suggest that different attorneys need to be appointed to prosecute parallel contempt proceedings. In addition, the evidentiary materials in question (deposition testimony of two witnesses and tapes of Terry's radio talk show programs) provided no unfair advantage to the Attorney General in the criminal case since they would have been available to any prosecutor through the criminal discovery process. Indeed, the Attorney General was prepared to call the two deponents as witnesses at the criminal trial, but defense counsel stipulated to admission of their civil deposition transcripts. Thus, there was no potential for the Attorney General to achieve a discovery advantage by his role in the civil contempt proceedings and, in fact, none was achieved.

*B. Personal Bias*

■ Terry also argues that Attorney General Abrams bore a personal enmity against him requiring his disqualification. Terry relies on an alleged verbal exchange between the two men in April of 1992 and on Mr. Abrams's campaign commercials referring to his battle against "anti-abortion extremists." We are unable to fault the district court's assessment that the first occurrence was an innocuous event of no significance to the prosecution and that the commercials simply reported facts and Mr. Abrams's characterization of certain pro-life groups. Moreover, any inference that the prosecution was motivated by Mr. Abrams's political ambitions is controverted by the fact that it was the district judge, not the Attorney General, who initiated Terry's prosecution for criminal as opposed to civil contempt. Furthermore, Mr. Abrams became involved as prosecutor only in response to the district court's request that he serve in this role after the United States Attorney for the Southern District of New York declined the court's invitation to prosecute the case.

■ Finally, we note that a defendant who claims that a prosecutor bore a personal bias against him is required to show that he was prejudiced by the prosecutor's involvement. *United States v. Wallach,* 935 F.2d 445, 460 (2d Cir.1991) (citing *Wright v. United States,* 732 F.2d 1048, 1056 n. 8 (2d Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985)). Here, Terry has failed to demonstrate how he was detrimentally affected by the appointment of Mr. Abrams as opposed to some other prosecutor. Terry does not contest the district court's factual findings or the sufficiency of the evidence leading to his conviction. We have previously found unconvincing the claim that "with another prosecutor, [the defendant] might have undeservedly escaped indictment and consequent conviction for crimes of which he was properly found to be guilty." *Wright,* 732 F.2d at 1058.

*II. The Preliminary Injunction*

Terry also contends that his contempt conviction is invalid because the district court's preliminary injunction is unconstitutional, and alternatively, because the injunction did not prohibit his activities.

*A. Constitutionality*

■ We reject Terry's contention that the injunction is unconstitutional for the same reason the trial court denied his motion to present constitutional arguments as a defense at his criminal trial. *United States v. Terry,* 802 F.Supp. 1094, 1101 (S.D.N.Y.1992) ("*Terry I*"). It is well established that a defendant generally is barred from collaterally attacking the constitutionality of a court order as a defense to his criminal contempt prosecution. *Walker v. City of Birmingham,* 388 U.S. 307, 314-15, 87 S.Ct. 1824, 1828, 18 L.Ed.2d 1210 (1967); *American Nat'l Cellular,* 868 F.2d at 317; *Terry I,* 802 F.Supp. at 1101 (and cases cited therein). The appropriate method for challenging the validity of a court order is to petition to have the order vacated or amended. *In re Providence Journal Co.,* 820 F.2d 1342, 1346 (1st Cir.1986), *modified on reh'g en banc,* 820 F.2d 1354 (1st Cir.1987), *cert. dismissed,* 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). Here, Terry did not appeal the issuance of the preliminary injunction as unconstitutional despite the district court's express advice to him at the injunction hearing that this avenue was open to him. *See Terry I,* 802 F.Supp. at 1102 n. 7 (excerpts from transcript of injunction hearing detailing district court's instructions regarding appeal process). He is thus precluded from attacking the injunction's constitutionality at this stage of the proceedings.

■ While an exception to the prohibition against collateral attack exists where the injunction is "transparently invalid," the preliminary injunction in this case was not "so far in excess of [the court's] authority that it ha[d] no right to expect compliance." *Providence Journal Co.,* 820 F.2d at 1347. On the contrary, the court issued a tailored order aimed at preventing specifically threatened violations of federal and state law. Furthermore, we agree with the district court that even the "transparently invalid" exception requires a showing that the party made a "good faith effort to seek emergency relief from the appellate court." *Terry I,* 802

F.Supp. at 1101–02 (quoting *Providence Journal Co.,* 820 F.2d at 1355). It is undisputed that Terry has failed to make such a showing.

*B. Scope*

■ As a final point, we are unpersuaded by Terry's argument that his conduct was not prohibited by the injunction. Terry contends that the injunction did not expressly forbid aiding and abetting another to perform the proscribed act of presenting fetal remains to then-Governor Clinton or then-Senator Gore. It is axiomatic in federal criminal law that when certain conduct is criminally proscribed by a statute, the proscription extends to the aider and abettor under 18 U.S.C. § 2(b). In this case, 18 U.S.C. § 401(3) makes it an offense against the United States to violate a federal court's order, and 18 U.S.C. § 2(b) provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal." Terry's alleged ignorance of these statutes is no defense to his criminal contempt charges. *See Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."); *United States v. Berardelli,* 565 F.2d 24, 30 (2d Cir.1977) (ignorance of statute that makes it a crime to consciously disregard an order of the court is no defense to criminal contempt charge).

Terry also argues that his activity was protected by a clause in the injunction which provides that, "nothing in the Court's Order should be construed to limit defendants and those acting in concert with them from exercising their legitimate First Amendment rights." As Judge Ward correctly determined, this provision did not nullify the effect of the clause in the injunction that prohibited Terry from presenting fetal remains to then-Governor Clinton. Moreover, Terry had ample opportunity to clarify any misunderstanding about the interrelationship of these two provisions at the injunction hearing or upon an immediate appeal, yet failed to do so. His willful violation of the court's order is not excused by post-hoc allegations that he was confused about the scope of terms that are clear and unambiguous.

For the reasons set forth above, the judgment of the district court is affirmed.