The **SPECTACULAR VENTURE, L.P.**, Plaintiff,

v.

**WORLD STAR INTERNATIONAL, INC.**, Defendant.

No. 94 Civ. 8917 (LAK).

United States District Court, S.D. New York.

June 3, 1996.

Daniel J. Kornstein, Mark Platt, Kornstein, Veisz & Wexler, for Plaintiff.

Lawrence Lonergan, Law Offices of Jacques Catafago, for Defendant.

### MEMORANDUM OPINION

KAPLAN, District Judge.

This contempt motion raises the question whether the Court may order the arrest of a contemnor located outside the district in which it sits and more than one hundred miles from the Courthouse.

## Facts

On September 12, 1995, plaintiff and defendant settled this case and a consent judgment was entered. The judgment directed defendant to pay plaintiff $15,253.50 by October 15, 1995, $47,460 by January 31, 1996, and $9,000 by February 28, 1996. Defendant defaulted and no payments ever have been made. This has led to repeated contempt applications, including the pending motion.

The first application was brought on by order to show cause dated January 17, 1996. It sought to hold both defendant and its principal, Thomas Reynolds, in contempt and, *inter alia*, to impose both punitive and coercive fines on both as well as the arrest and detention of Reynolds pending compliance with the order. On February 1, 1996, the Court granted part of the relief sought. It held defendant in contempt, directed it to pay the $15,253.50 then in arrears, imposed a coercive fine of $500 per day, commencing on January 30, 1996, for each day the consent judgment was not complied with, and awarded counsel fees of $2,500 to plaintiff and against defendant. It held in abeyance the request to hold Reynolds in contempt and to order his arrest.

The February 1, 1996 order was ignored as well. On February 20, 1996, plaintiff made its second contempt motion, again by order to show cause. This motion too sought punitive and coercive fines, an order of arrest against Reynolds, and other relief, including a direction to pay the defaulted January 31, 1996 installment. On February 28, 1996, the Court entered an order granting the motion in part. It directed the defendant to pay the January 31, 1996 installment, awarded additional counsel fees against defendant in the amount of $1,500, and increased the amount of the daily coercive fine by $1,000 per day, effective February 29, 1996. Concerned that Reynolds, who had not appeared by counsel despite having been advised of the proceedings by counsel for defendant, did not appreciate the gravity of his position, the order further directed that Reynolds file any papers in opposition to the motion to hold him in contempt, individually, by 5 p.m. on March 4, 1996. After finally receiving an affidavit from Reynolds, the Court entered a further order, dated March 14, 1996, holding Reynolds in civil contempt, fining him $250 per day, effective March 15, 1996, for each day the defendant failed to comply with the consent judgment, and indicating that the order was without prejudice to an application for further relief in the event the judgment was not complied with.

On April 9, 1996, plaintiff moved by order to show cause for a third contempt adjudication and for an order directing payment of the final $9,000 installment, which allegedly had not been paid. Defendant appeared by counsel on the return of the order to show cause but Reynolds, who evidently avoided personal service of the order to show cause,[1] did not. His failure to appear, however, was not attributable to lack of notice, as defendant's counsel represented to the Court that he had spoken to Reynolds personally. (Tr., Apr. 22, 1996, at 4) Nevertheless, the Court directed defendant's counsel to provide plaintiff's counsel with information as to Reynolds' whereabouts in order to facilitate personal service, told counsel that Reynolds had until April 26, 1996 to "do something that would suggest to me why I shouldn't have him arrested and locked up," and directed defendant's counsel to send a copy of the transcript to Reynolds. (*Id.* at 7) Plaintiff's counsel subsequently filed proof of personal service on Reynolds on April 25, 1996. Nevertheless, Reynolds did not appear or communicate with the Court in any way.

On April 29, 1996, the Court entered an order directing counsel to brief the question whether it has the power to order Reynolds' arrest outside this district for civil contempt. Plaintiff submitted a brief in response to the order. Neither Reynolds nor the defendant did so.

## Discussion

A nonparty respondent may be held in contempt of a court order if the respondent abets the party named in the order in its noncompliance or if it is legally identified with that party. *E.g., People of the State of New York v. Operation Rescue,* 80 F.3d 64,

---

1. Tr., Apr. 22, 1996, at 3.

70 (2d Cir.1996). Here, no one disputes that defendant has failed to comply with the consent judgment or with any of the Court's several subsequent orders. Nor is it disputed that Reynolds is the defendant's president and principal. (Joint Pretrial Order at § III ¶ 5) As a practical matter, the defendant and Reynolds are one and the same. Accordingly, as the Court already has determined, Reynolds is in contempt of the judgment and orders.

■ Nor does the fact that plaintiff seeks to imprison Reynolds for contempt of an order directing the payment of money run afoul of any prohibition on imprisonment for debt. Assuming *arguendo* that 28 U.S.C. § 2007(a) would prevent such imprisonment, imprisonment is an appropriate sanction for contempt of a court order directing an individual to make a particular payment. *E.g., Commodity Futures Trading Commission v. Wellington Precious Metals, Inc.,* 950 F.2d 1525 (11th Cir.) (refusal to comply with disgorgement order justified imprisonment for civil contempt), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *Verone v. Taconic Telephone Corp.,* 826 F.Supp. 632 (N.D.N.Y.1993) (attorney's failure to pay Rule 11 sanction); *In re Spanish River Plaza Realty Co.,* 155 B.R. 249 (Bankr.S.D.Fla. 1993) (refusal to pay court ordered fine). Moreover, if the contemnor can establish that he or she is unable to comply with the Court's order, the contempt sanction must be lifted because it ceases to have a useful coercive effect. *Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 638 & n. 9, 108 S.Ct. 1423, 1432–33 & n. 9, 99 L.Ed.2d 721 (1988); *Maggio v. Zeitz,* 333 U.S. 56, 72–73, 68 S.Ct. 401, 409–10, 92 L.Ed. 476 (1948); *Simkin v. United States,* 715 F.2d 34, 37 (2d Cir.1983). The burden of showing inability, however, is on the contemnor. *Simkin,* 715 F.2d at 37. Here, despite repeated opportunities afforded him by the Court, Reynolds has made no effort, apart from a few broad generalities, to demonstrate that he and the defendant are unable to make the payments at issue.

■ In determining the sanction appropriate for a contempt, the Court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *New York State NOW v. Terry,* 886 F.2d 1339, 1353 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). Here, all avenues short of imprisonment to secure compliance have been exhausted. In consequence, if an order of arrest would be likely to produce the desired result, the Court would issue it. Unfortunately, it appears that it would be ineffective.

■ Reynolds is located in Texas. There is no suggestion that he is likely to come to the Southern District of New York in the foreseeable future. In consequence, in determining whether an order of imprisonment is likely to be effective, it is essential to determine whether the Court has the power to order Reynolds' arrest in Texas.

■ Under 18 U.S.C. § 3041, the Court has the power to direct the arrest of a criminal contemnor anywhere in the United States. Here, however, the motion seeks the arrest and imprisonment of Reynolds only until the judgment and orders are complied with. The coercive, as distinguished from punitive, nature of the relief demonstrates that the contempt for which plaintiff seeks to have Reynolds imprisoned is civil in nature. *International Union, United Mine Workers of America v. Bagwell,* —— U.S. ——, —— ——, 114 S.Ct. 2552, 2557–59, 129 L.Ed.2d 642 (1994); *Federal Deposit Insurance Corp. v. LeGrand,* 43 F.3d 163, 168 (5th Cir.1995). Accordingly, Section 3041 does not empower the Court to order an arrest in Texas in this case.

FED.R.CIV.P. 4.1(b) governs commitment for civil contempt and provides:

> "An order of civil commitment of a person held to be in contempt of a decree or injunction issued to enforce the laws of the United States may be served and entered in any district. Other orders in civil contempt proceedings shall be served in the state in which the court issuing the order to be enforced is located or elsewhere within the United States if not more than

100 miles from the place at which the order to be enforced was issued."

The underlying litigation here is a diversity case. Plaintiff's claim did not arise under the laws of the United States. Plaintiff argues that the phrase "laws of the United States" in Rule 4.1(b) includes the Judicial Code and the Federal Rules of Civil Procedure and, in consequence, that the judgment and orders of which Reynolds has been found in contempt therefore should be regarded as "laws of the United States." The argument proves far too much. If the violation of an order or injunction were regarded as within the first sentence of Rule 4.1(b) solely because it was issued by a federal court, the second sentence of the Rule would be meaningless. Moreover, the Advisory Committee Note to the 1993 amendment to the Rule makes plain that the first sentence of Rule 4.1(b) applies only to orders "involving the enforcement of federally-created rights." Accordingly, the Court holds that the civil contempt order sought here, as well as those previously entered in this case, are not issued "to enforce the laws of the United States" within the meaning of Rule 4.1(b). In consequence, any order of civil commitment in this case must be served in the State of New York or within 100 miles of the Courthouse. As there is no reasonable prospect that Reynolds will be subject to service of such an order, there would be little point in issuing it. *See MacDougall v. Green*, 335 U.S. 281, 290, 69 S.Ct. 1, 5, 93 L.Ed. 3 (1948) (Douglas, J., dissenting) ("The equity court, moreover, must always be alert in the exercise of its discretion to make sure that its decree will not be a futile and ineffective thing."). This determination, of course, is without prejudice to any criminal contempt proceeding that may be instituted either by the United States or by the plaintiff.

### Conclusion

For the foregoing reasons, plaintiff's pending motion is granted to the extent, and only to the extent that:

(a) Defendant and Reynolds again are held in civil contempt of this Court.

(b) Defendant shall pay to plaintiff forthwith the sum of $9,000 on account of the defaulted February 28, 1996 installment together with interest thereon at the rate of 9%, retroactive to February 28, 1996.

(c) Defendant and Reynolds shall pay to plaintiff a reasonable attorney's fee for the cost of bringing and prosecuting this motion, S.D.N.Y.Civ.R. 43(a), which the Court determines to be $4,000, together with interest thereon at the rate of 9%, commencing today.

(d) Effective today, the amount of the coercive fine imposed on Reynolds for this and the previous contempt shall increase to the sum of $500 for each day defendant fails to comply with its obligations under the judgment and the subsequent orders of the Court.

(e) Effective today, the amount of the coercive fine imposed on defendant for this and the previous contempts shall increase to $2,500 for each day defendant fails to comply with its obligations under the judgment and the subsequent orders of the Court.

SO ORDERED.