OPINION OF THE COURT
Leonard P. Rienzi, J.
On July 1, 1996 the court rendered an oral decision on defendant’s motion to inspect Grand Jury minutes on indictment 93/96. Motion to dismiss counts 1-11 was denied. Motion to dismiss count 12 was granted. The People were granted leave to re-present count 12.
Upon re-presentation of count 12, indictment 319/96 was filed. The court has inspected the Grand Jury minutes relating to indictment 319/96. Defendant’s motion to dismiss is denied. Upon the motion of the People and with no objection by defendant, indictment 319/96 is consolidated with indictment 93/96.
The date in count 9 of indictment 93/96 is amended on motion of the People to read January 25, 1995 rather than January 1, 1995. This amendment is supported by the evidence presented to the Grand Jury.
Motion to preclude identification evidence is denied based on the People’s representation that no out-of-court identification was conducted in this matter.
Motion to preclude statements allegedly made on December 6, 1995 is denied in part and is granted in part. Statements allegedly made during the res gestae and prior to arrest on December 6, 1995 require no notice. (People v Wells, 133 AD2d 385, lv denied 70 NY2d 939 [1987].) Statements allegedly made after the defendant was placed under arrest are precluded. No notice or voluntary disclosure form was filed within 15 days of defendant’s arraignment on the indictment in Supreme Court. The notice of postarrest statements served and filed at *852 defendant’s Criminal Court arraignment is insufficient. The notice which alleges that defendant stated: "I’m only trying to help People [sic]”; "I have a valid registration”; "I’m suing you people over this” is bereft of details delineating the date, time, place and party to whom the statements were allegedly made. The People are required to inform defendant not only of the sum and substance of defendant’s oral statements, but also of the time and place that the statements were made. (People v Lopez, 84 NY2d 425, 428 [1994].)
Thus, the tape recording made on the date of arrest and turned over to defendant on April 25, 1996 is admissible until such point in the recording where defendant is arrested. The balance of the tape recording is precluded.
Motion to preclude from use by the People in their direct case statements made by defendant in his Federal pro se civil rights lawsuit against various New York State officials is granted. Defendant has brought suit alleging that New York State employees have violated his constitutional rights. Just as in a criminal case where defendant’s statements at a hearing on a motion to suppress are not admissible if offered by the People in their direct case, likewise defendant’s civil case statements in a pro se lawsuit alleging constitutional violations ought not be introduced against him at a criminal trial on related issues. (See, e.g., Simmons v United States, 390 US 377 [1968].) There is, however, no basis for asserting that statements from defendant’s Federal case were involuntarily made. Thus, the People may use such statements from defendant’s civil lawsuit if relevant to impeach the credibility of defendant. (See, Harris v New York, 401 US 222 [1971].)
Whether and to what extent the existence of the Federal lawsuit is admissible in defendant’s criminal trial is referred to the discretion of the Trial Judge. Likewise, issues relating to the admissibility of prescriptions allegedly issued by defendant is respectfully referred to the Trial Judge.
Defendant’s motion to preclude the New York State Attorney-General from prosecuting this case is denied.
On December 27, 1994 defendant’s license to practice medicine in New York State was revoked. On April 12, 1995 defendant filed a pro se lawsuit in United States District Court for the Eastern District of New York challenging the revocation of his license and seeking damages in the amount of $40 million. Defendant named as defendants in his Federal civil action approximately 30 individuals who were associated with the investigation and administrative proceedings which *853 resulted, in the revocation of his license. Among the public officials named were the New York State Commissioner of Health, the New York State Commissioner of Education and the New York State Board of Regents. Defendant also named the New York State Attorney-General as a defendant in his Federal civil action. Defendant’s Federal lawsuit (as amended May 8, 1995) also sought to enjoin the New York State Attorney-General (and all the other Federal civil lawsuit defendants) from participation in any "administrative action and/or criminal prosecution” based on any allegation of practicing medicine without the appropriate license.
In late 1995 the New York State Department of Education Office of Professional Discipline investigated a complaint that defendant was practicing medicine without a license. On December 6, 1995 defendant was arrested in Richmond County for the unauthorized practice of medicine. Evidence was presented to a Richmond County Grand Jury by the New York State Attorney-General and the Grand Jury voted the instant indictment which was filed on February 22, 1996. In the consolidated indictment (number 93/96) defendant is charged with 12 counts of unauthorized practice of medicine (class E felonies). The indictment charges that defendant engaged in the unauthorized practice of medicine in Richmond County on 12 dates in 1995. Many of the dates predate the filing of defendant’s Federal lawsuit. Civilian witnesses testified in the Richmond County Grand Jury concerning each incident alleged in the indictment. The Grand Jury minutes have been inspected. The evidence supporting each count is legally sufficient.
While the indictment was pending in New York State Supreme Court, defendant (who had originally sought in his Federal lawsuit to enjoin the New York State Attorney-General from prosecuting him for unauthorized practice of medicine) filed a motion in Federal court for a preliminary injunction to enjoin the New York State Attorney-General, the New York State Commissioner of Health, the New York State Commissioner of Education and the 27 others he sued in Federal court from participating in the instant prosecution of this indictment. This motion was filed in Federal court on January 17, 1996. No injunction has been issued by Federal court.
On August 20, 1996 defendant filed the instant motion before this court seeking to remove the New York State Attorney-General from this case.
*854 In sum there are two distinct lawsuits. First, there is a civil case in Federal court in which defendant is suing New York State officials (including the New York State Attorney-General) for allegedly violating his constitutional rights in proceedings which culminated in the revocation of his license to practice medicine. Second, there is the instant criminal prosecution in New York State Supreme Court in which the New York State Attorney-General is prosecuting defendant for the unauthorized practice of medicine after his license was revoked, on specific dates both before and after the filing of defendant’s Federal lawsuit.
The Legislature has very clearly outlined the duties of the New York State Attorney-General in Executive Law § 63:
"§ 63. General duties
"The attorney-general shall:
"1. Prosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel, in order to protect the interest of the state * * * No action or proceeding affecting the property or interests of the state shall be instituted, defended or conducted by any department, bureau, board, council, officer, agency or instrumentality of the state, without a notice to the attorney-general apprising him of the said action or proceeding, the nature and purpose thereof, so that he may participate or join therein if in his opinion the interests of the state so warrant.”
Thus, by filing suit against the Attorney-General the defendant brought the Attorney-General into defendant’s Federal civil case. Whether or not named as a defendant in the Federal lawsuit, the Attorney-General would be required to defend the interests of State agencies and the public officials whom defendant sued in Federal court. (Executive Law § 63.) The Attorney-General’s statutory obligation to defend this lawsuit is crystal clear. Just as clear is the Attorney-General’s statutory obligation to prosecute defendant for his alleged unauthorized practice of medicine in New York State after the revocation of his license. (Executive Law § 63.)
Defendant argues that the dual role of the Attorney-General as a named defendant in the Federal civil rights lawsuit and as prosecutor in the State criminal proceedings has the appearance of impropriety, violates due process and has created a conflict of interest. At the outset it should be noted that the *855 Attorney-General is a "named defendant” in the Federal case because the defendant named him as a defendant. The cases which defendant cites in support of disqualification are clearly distinguishable. In People v Shinkle (51 NY2d 417 [1980]), defendant Shinkle’s assigned criminal defense counsel who had interviewed Shinkle extensively and was intimately familiar with the contents of his file and the formulation of his defense strategy became Chief Assistant District Attorney in the District Attorney’s office that was prosecuting Shinkle’s case. Shinkle sought to restrain the District Attorney’s office from prosecuting. His application was denied and he was convicted. The Court of Appeals reversed the conviction based on the "unmistakable appearance of impropriety” which "created the continuing opportunity for abuse of confidences entrusted to the attorney during the months of his active representation of defendant”. (People v Shinkle, supra, at 420.) In People v Zimmer (51 NY2d 390 [1980]), the District Attorney who personally presented the evidence to the Grand Jury which indicted Zimmer and personally tried the case against him was a stockholder of record and corporation counsel for the corporate complainant which the defendant was charged with defrauding. Again, the Court of Appeals reversed based on the failure of the prosecutor to recuse himself. The District Attorney’s personal and professional relationship with the defendant (Shinkle) and his financial ties to the corporate complainant (Zimmer) created blatant and irreconcilable conflicts of interest in each case.
The instant situation bears little resemblance to Shinkle (supra) or Zimmer (supra). Unlike Shinkle, in the instant case the Attorney-General never represented the defendant, never had an attorney-client relationship with him and never shared his confidence or planned trial strategy with him. Unlike Zimmer, the Attorney-General never represented a private sector litigant against defendant and neither had nor will have a personal financial interest in the outcome of litigation.
Initially, it is important to note that the Attorney-General is a constitutional officer elected by the voters of New York State (NY Const, art V, § 1) and charged by statute with the duty to "[p]rosecute and defend all actions and proceedings in which the state is interested”. (Executive Law § 63.) As the Court of Appeals has stated: "The courts, as a general rule, should remove a public prosecutor only to protect a defendant from actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence (e.g., People v *856 Zimmer, 51 NY2d 390, supra; People v Shinkle, 51 NY2d 417, 421) and the appearance of impropriety, standing alone, might not be grounds for disqualification. The objector should demonstrate actual prejudice or so substantial a risk thereof as could not be ignored.” (Matter of Schumer v Holtzman, 60 NY2d 46, 55 [1983].) In a similar vein, the United States Court of Appeals for the Second Circuit has ruled that "the Attorney General of the State of New York represents a sovereignty and is presumed to act with a sense of impartiality”. (United States v Terry, 17 F3d 575, 577 [1994].) The Terry case involved the designation of the Attorney-General to prosecute a criminal contempt proceeding in Federal court based on the violation of a preliminary injunction which had been obtained by the People of the State of New York, represented by the New York State Attorney-General.
In the instant case the Attorney-General is prosecuting based on the mandate of the New York Constitution to fulfill the specific duties delineated in the duly enacted Executive Law. He is fulfilling his constitutional and statutory duties. Defendant has demonstrated neither actual prejudice from the alleged conflict of interest, nor substantial risk of an abuse of confidence nor even the appearance of impropriety. The fact that a constitutional officer is performing the duties imposed by the Constitution and the Legislature does not amount to the "appearance of impropriety”. Nor does the fact that the prosecutor seeks to use documentary evidence generated by the defendant in his civil lawsuit at his criminal trial constitute the appearance of impropriety. Any prosecutor (whether the Attorney-General or a successor) would seek to discover and use all available legal evidence (including judicial admissions in public court records) to prove his case. In any event, the court has precluded the use of defendant’s civil case documents from use by the People in their direct case.
The legally sufficient evidence before the Grand Jury indicates that defendant was engaged in the unauthorized practice of medicine on numerous occasions both before and after defendant filed his Federal lawsuit. From the initial filing on April 12, 1995 and a subsequent motion for a preliminary injunction (Jan. 13, 1996) defendant in his Federal lawsuit has sought to enjoin the Attorney-General from fulfilling the legal responsibilities of his office. In essence, during a time period in which defendant is charged with breaking the law, he seeks to enjoin the public official charged with enforcing these very laws from doing the job which he has been elected to do.
*857 Public policy concerns clearly dictate that a defendant ought not be able to preemptively and peremptorily strike the investigating prosecutor and investigating State officials from his case by merely filing a lawsuit. Any other policy might paralyze the prosecution of criminal defendants as defendants file civil lawsuits seriatim against whatever office is assigned to prosecute their cases.
In light of the awesome power and discretion which our law vests in public prosecutors, heightened judicial scrutiny is essential where a single defendant is involved in multiple legal actions involving a single prosecutor. In the instant situation the existence of the defendant’s civil lawsuit against the New York State Attorney-General creates neither actual prejudice nor a demonstrated conflict of interest nor a violation of due process of law. In prosecuting the criminal action and defending the civil action a constitutional officer is fulfilling the statutory obligation of his office. (See, Executive Law § 63.) Defendant’s motion to remove the New York State Attorney-General is denied.