FEDERAL TRADE COMMISSION,
Plaintiff,

v.

VERITY INTERNATIONAL,
LTD., et al., Defendants.

No. 00 CIV 7422 (LAK).

United States District Court,
S.D. New York.

May 2, 2001.

Lawrence Hodapp, David M. Torok, Federal Trade Commission, for Plaintiff.

John J.D. McFerrin–Clancy, Jeffrey M. Eilender, Rex Chen, Schlam Stone & Dolan, New York City, for Defendants Verity International, Ltd., Robert Green and Marilyn Shein.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is a motion to hold defendants Verity International, Ltd. ("Verity"), Robert Green and Marilyn Shein in civil contempt of court for failing to comply with the preliminary injunction previously entered in this action.[1] There are no issues of fact.

### I

This is an action by the FTC against, insofar as is relevant to this motion, the operators of a billing service for Internet pornographers. The general nature of the action and the claims asserted here are set forth in the Court's opinion granting the plaintiff's motion for a preliminary injunction, familiarity with which is assumed.[2]

Among the forms of relief the FTC sought in its motion for a preliminary injunction were an asset freeze and a direction that defendants Verity, Green and Shein, all of whom are foreigners, provide full and truthful disclosure of their financial condition. While these defendants contested the propriety of a preliminary injunction in general and the necessity for a freeze order in particular, they did not otherwise resist the FTC's request for an order requiring disclosure of their financial condition. Indeed, when the Court ruled in the Commission's favor, it directed that the Commission serve a proposed form of order and afforded these defendants the opportunity to respond. When these defendants responded to the FTC's proposed

---

1. The pending motions to extend and modify the preliminary injunction will be dealt with in due course.

2. *FTC v. Verity Int'l. Ltd.,* 124 F.Supp.2d 193 (S.D.N.Y.2000).

form of order, which contained financial disclosure provisions, with their own proposed form, they essentially adopted the Commission's form on these points.

The two provisions of the order at issue here are Section III.E and V. The former provides that defendants are ordered to "[p]rovide plaintiff access to the defendants' records and documents held by financial institutions outside the territorial United States, by signing the Consent to Release of Financial Records attached [to the injunction] as Attachment A." The latter provides:

> "IT IS FURTHER ORDERED that within twenty-one (21) days after entry of this Order, each defendant shall provide to counsel for the Commission a completed financial statement, on the forms attached hereto as Attachment B for the individual defendants and Attachment C for the corporate defendant, accurate as of the date of entry of this Order."

The FTC acknowledges that Verity has complied with these provisions of the preliminary injunction, albeit belatedly, and no longer seeks to hold it in contempt. Green and Shein, however, are another matter. Neither has complied with either Section III.E or V. In fact, although they appear to have told their prior counsel that they would comply at least with Section V by January 25, 2001, they changed their mind, leading to the withdrawal of prior counsel.[3] Now, both have submitted declarations stating that they have not complied, and do not intend to comply, with those provisions of the preliminary injunc-

tion. They add that they "realize that there is no legal excuse for [their] disobedience of those aspects of the Court's Order, and [that they] have been advised by [their] attorneys to comply with the order in its entirety."[4]

## II

■ As defendants concede, a finding of contempt is appropriate if there was a clear and valid order and defendants, knowing of the order, failed to comply and made no diligent effort to do so.[5] As Green and Shein further concede, these requirements, with two minor quibbles, have been satisfied here. Certainly defendants knew of the order and deliberately made no effort to comply with it. Indeed, Green and Shein have submitted declarations acknowledging that there is no legal excuse for their failure to comply. Nevertheless, their counsel has advanced two arguments in opposition to holding them in contempt.

### A. Validity of the Order

■ In most circumstances, the validity of an order is not an appropriate consideration on a contempt motion, as a court order ordinarily must be obeyed unless and until it is reversed or vacated. The only exceptions are where the order exceeds the court's jurisdiction or is "transparently invalid."[6] Moreover, an alleged contemnor will not be heard to allege even the transparent invalidity of a court order unless the defendant has made "some good faith effort to seek emergency relief from the appellate court" or shown compelling circumstances such as a need for immedi-

---

3. Tr., Jan. 31, 2001, at 2.

4. Green Decl. ¶ 3 (Mar. 26, 2001); Shein Decl. ¶ 3 (Mar. 26, 2001).

5. *Bear U.S.A., Inc. v. Kim*, 71 F.Supp.2d 237, 246 (S.D.N.Y.1999), *aff'd*, 216 F.3d 1071 (2d Cir.2000).

6. *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir.1995) (citing *Walker v. City of Birmingham*, 388 U.S. 307, 317–21, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. Terry*, 17 F.3d 575, 579 (2d Cir.), *cert. denied*, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994)).

ate action.[7] Nevertheless, Green and Shein contend that Section III.E, which required them to provide the FTC with consents allowing the Commission to access their foreign bank records, and Section V, which required the submission of financial statements, are transparently invalid because the forms attached to the injunction wrongly would have required them to attest that the forms were executed voluntarily rather than pursuant to court order.[8] The argument is utterly without merit.

To begin, there is every reason to conclude that the forms would have been executed voluntarily. The FTC proposed an injunction requiring the execution of these forms. Green and Shein not only did not object to that aspect of the order, they incorporated it into the form of order that *they* proposed to the Court.[9] But there is no need to rely on this, as their position must be rejected on other grounds.

In this case there was nothing stopping Green and Shein from raising their objection to the wording of the form of consent and of the financial statements. Their contention that they could not object earlier because they lacked counsel is without merit. The Court's opinion inviting proposed forms of the preliminary injunction was issued on December 13, 2000, more than a month before defendants fired the second firm that represented them.[10] In fact, defendants did respond and object to other aspects of the order in their December 21 submission. Even if they had lacked counsel earlier than in fact was the case, it would be difficult to see why defendants, having voluntarily discharged their counsel,[11] should be heard to claim that they were prevented by their own act from objecting to the order. Nor was there any need for immediate action. Instead, Green and Shein simply decided to ignore the Court's order. Thus, the collateral bar doctrine forecloses them from contesting its validity.

## B. *Vagueness*

■ Green and Shein argue also that Section III.E of the preliminary injunction is insufficiently definite to justify a contempt finding because it fixed no date certain by which they were obliged to provide the consent forms. The argument is disingenuous given their persistent refusal to comply with demands for the forms and the passage of months since the entry of the order, not to mention their acknowledgment that there is "no legal excuse" for their admitted "disobedience." But it is unnecessary to rely on Section III.E because Section V did provide a deadline. The financial statements there required were to have been submitted within 21 days after entry of the preliminary injunction, which occurred on January 4, 2001.

---

**7.** *Id.* (quoting *Matter of Providence Journal Co.*, 820 F.2d 1354, 1355 (1st Cir.1987) (*in banc*), *cert. dismissed*, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988)) (internal quotation marks omitted).

**8.** *Cf. In re N.D.N.Y. Grand Jury Subpoena*, 811 F.2d 114, 117 (2d Cir.1987).

**9.** Defendants' two alternative proposed orders adopted the FTC's financial disclosure provisions with a minor exception. One proposed order eliminated III.E for reasons related to defendants' objections to the asset freeze. *See* Defendants' response to the FTC's proposed preliminary injunction order, at 6–7, Ex. A, Ex. B (Dec. 21, 2000).

**10.** Defendants technically were without counsel from February 9, when Klein, Zelman, Rothermel & Dichter LLP officially withdrew, to March 9, when current counsel began to represent defendants. Even accepting that Klein Zelman had been fired in October 2000, Dichter Aff., ¶ 4 (Jan. 31, 2001), defendants lacked counsel in a practical sense only from January 31, 2001, when Collier Shannon Scott PLLC and Swidler Berlin Shereff Friedman LLP withdrew, to March 9.

**11.** *See* Coyne Aff., ¶ 5 (Jan. 25, 2001); Dichter Aff., ¶ 4 (Jan. 31, 2001).

### C. Coercive Sanctions

#### 1. Coercive Fine

■ In view of the foregoing, the Court finds, by clear and convincing evidence, that Green and Shein willfully disobeyed Section V of the preliminary injunction and therefore are in contempt of this Court.[12]

"In determining the sanction appropriate for a contempt, the Court must consider '(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden.' "[13]

■ Here there is little question that the contemnors' brazen refusal to comply with Section V of the preliminary injunction threatens serious harm. They or their associates have derived millions of dollars from the United States, a material part of it, at least, by what the Court preliminarily has determined probably was a substantial consumer fraud. The consumer redress that potentially could be required in this case is large. The contemnors may have substantial assets within the United States available for that purpose, not to mention assets abroad that might be reached. Indeed, they have about $1.3 million frozen in an account here controlled by defendant Integretel, Inc. and may have an interest in another $5.7 million in the hands of AT & T. By withholding financial statements, Green and Shein quite deliberately and willfully are attempting to thwart efforts by the FTC to ensure that funds are available to remedy the harm they allegedly have done.

■ Turning to the second prong of the standard, Green and Shein assert that they will not comply with the Court's order in any event and have the unmitigated gall to argue that no coercive fine should be imposed because it therefore would be ineffective. In so doing, they misconstrue the relevant consideration. Courts consider the likely effect of a proposed sanction in promoting compliance in order to avoid imposing a sanction too small to secure the desired result or so large as to be unnecessarily harsh. These objects do not require courts to decline to impose coercive sanctions simply because the contemnor asserts that it will not comply irrespective of what the Court may do. Indeed, the argument put forward by Green and Shein simply makes clear that all doubts in this case as to the sufficiency of any given proposed fine must be resolved against them in light of their obduracy.

Finally, the Court is obliged, in the ordinary case, to consider the contemnor's resources. Here, however, the contemnors have made that impossible—the contempt consists of their refusal to provide that information to the Court. The only indications before the Court are that there is $1.3 million of their money frozen at Integretel and that they appear to own all or substantial shares of at least two profitable firms. Whatever the details, they obviously are persons of very substantial means.

In all the circumstances, the Court finds that a coercive fine of $5,000 per day on each of Green and Shein for every further day of noncompliance with Section V, up to and including May 11, 2001, is appropriate. Effective May 12, 2001, the fine shall in-

---

**12.** It need not make any finding with respect to Section III.E at this time.

**13.** *Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F.Supp. 683, 685 (S.D.N.Y. 1996) (quoting *New York State NOW v. Terry*, 886 F.2d 1339, 1353 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990)).

crease to $10,000 per day for each additional day of noncompliance.

### 2. Civil Commitment

This is an action to enforce the Federal Trade Commission Act, and the preliminary injunction was issued in furtherance of that objective.

FED. R. CIV. P. 4.1(b) provides in relevant part that:

"An order of civil commitment of a person held to be in contempt of a decree or injunction issued to enforce the laws of the United States may be served and enforced in any district."

Accordingly, Green and Shein are subject to arrest and civil commitment pending their compliance with Section V of the preliminary injunction anywhere in the United States and its territories.

■ An order of civil commitment is entirely appropriate here. The contempt of Green and Shein is deliberate, calculated and willful. Their contention that they would be unlikely to enter the United States while the contempt matter is outstanding, moreover, would not necessarily make such an order futile. Contemnors are international business people of means with business interests in the United States. While they may be able to remain outside the country for a long period in order to avoid arrest, it seems likely that such conduct would interfere with their ability to manage their United States interests and otherwise give them an incentive to comply with the Court's order. In any case, it is entirely appropriate to view an order of arrest directed to a foreign contemnor as the practical equivalent of an order preventing the contemnor from entering the United States until the contem-

nor complies with the Court order, which in the case of these individuals is an entirely appropriate coercive measure. Thus, an order of civil commitment has some promise of coercing compliance in this case, contemnors' denials notwithstanding. Certainly this case is quite different from *Spectacular Venture, L.P.*,[14] upon which contemnors rely, where the Court declined an order of civil commitment on the ground of apparent futility. The contemnor there was an older and seriously ill man with no foreseeable reason to come within the Court's jurisdiction.[15]

Accordingly, the Court will order the arrest of Green and Shein, wherever they may be found within the jurisdiction of the United States, and their incarceration in this District pending their full and complete compliance with Section V of the preliminary injunction.

### III

The Court is mindful of the contemnors' current feeling that the order is unduly intrusive. They were given ample opportunity to advance that view to the Court before the order was entered, a course they did not take, and even now belatedly seek modification of the order, as is their right. But they are not entitled simply to disobey it. Down that path lies anarchy.

For the foregoing reasons, Robert Green and Marilyn Shein each is held in civil contempt of this Court by reason of their willful and deliberate refusal to comply with Section V of the preliminary injunction. Each is fined $5,000 per day for each day after the date hereof, to and including May 11, 2001, on which he or she fails to comply fully with Section V. If either has not fully complied with Section

---

**14.** 927 F.Supp. 683.

**15.** *Spectacular Venture* was a diversity case, a circumstance that limited the geographic reach of the Court's power to order civil commitment to the Southern District of New York and environs. The contemner resided in Texas.

V prior to May 12, 2001, he or she shall be fined $10,000 for each additional day of noncompliance thereafter.

Further, the Court hereby orders the arrest and civil commitment of Robert Green and Marilyn Shein, wherever they may be found within the jurisdiction of the United States, and their detention in this District pending further order of this Court, which will release them upon their full and complete compliance with Section V of the preliminary injunction, assuming of course the absence of any change in circumstances warranting further detention. The United States Marshal of this District is directed to take all appropriate steps to ensure that this order of arrest and civil commitment is executed wherever Green or Shein may be found within the United States or its territories, including appropriate notification of the Immigration and Naturalization Service and the United States Customs Service. Plaintiff shall submit to the Court for signature any warrant or other process that may be helpful or appropriate in carrying out this order.

SO ORDERED.