**STATE of Alaska, Appellant,**

v.

**Dale HULETZ, Appellee.**

**No. A–4034.**

Court of Appeals of Alaska.

Sept. 18, 1992.

Stephanie Rhoades, Asst. Dist. Atty., Edward E. McNally, Dist. Atty., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellant.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Dale Huletz was convicted of fourth-degree assault following a non-jury trial before District Court Judge William H. Fuld. Judge Fuld suspended the imposition of Huletz's sentence on condition that Huletz have no contact with his victim and no similar offenses for a year; in addition, the judge ordered Huletz to pay a fine of $250 and perform forty hours of community service. The state appeals, contending that the sentence is too lenient. We agree and disapprove the sentence.[1]

Huletz was convicted of assault for beating his girlfriend, S.M., who lived with Huletz in his trailer in Anchorage. Shortly before midnight on August 20, 1990, S.M. arrived home from work. She was tired and had a class to attend the next morning. Huletz was already at home; he was highly intoxicated and argumentative. S.M. did not want to argue, so she went directly to the trailer's bedroom and tried to go to sleep. Huletz ordered her to get up; when she did not respond, he flicked the light switch on and off repeatedly, then turned

---

1. When the state appeals a lawfully imposed sentence as too lenient, this court may approve or disapprove the sentence, but is not authorized to change it. *See* AS 12.55.120(b).

the trailer's stereo system on at full volume. Finally, S.M. decided to leave.

Huletz stood at the front door of the trailer. As S.M. tried to walk out, Huletz struck her several times in the face with his fists, then grabbed her by her hair and arms and threw her back. S.M. started for the door once more. Huletz hit her again with his fist. Fearing more violence, S.M. sat down on the couch and made no further effort to leave. Huletz remained by the door, blocking S.M.'s exit, from approximately 1:00 a.m. until almost 6:00 a.m., when it was time for him to go to work.

After Huletz left, S.M. packed her belongings and moved out. Suffering from bruises and swelling on her face, head, and forearms, she went to the hospital emergency room for treatment.

At the time of the assault, Huletz was forty-one years of age. Although Huletz had no history of assaultive behavior, he had been convicted of driving while intoxicated in 1983 and of leaving the scene of an accident in 1988. At trial, Huletz denied S.M.'s charge of assault. He acknowledged striking S.M. once, but claimed that he did so only to calm her down after she had argued with him and become hysterical.

The trial court found Huletz guilty, concluding that his version of the incident was not credible. However, given that Huletz had no prior assault convictions and had apparently never previously assaulted S.M., the court decided to suspend the imposition of his sentence. Even though Huletz had two prior misdemeanor convictions, the court stated that there was "no reason for you to have the stigma of a conviction for the rest of your life." Although the court recognized that Huletz's past and current offenses indicated the likelihood of a longstanding drinking problem, the court thought it unnecessary to require Huletz to engage in any form of alcohol rehabilitation screening or treatment; nor did the court deem it necessary to order any type of counseling for Huletz's apparent difficulty in controlling his anger. The court further concluded that no jail time was necessary, since Huletz had served honor-

ably in the military, had been a productive member of society, and had hired an attorney to represent him.

Based on these findings, the court suspended the imposition of Huletz's sentence for one year on condition that he refrain from any contact with the victim and commit no similar offenses; the court also ordered Huletz to pay a fine of $250 and to perform forty hours of community service. To accommodate Huletz's work schedule, the court indicated that he could perform his community service at any time within six months. The court expressed the view that this disposition satisfied the sentencing goals set out in State v. Chaney, 477 P.2d 441, 443–44 (Alaska 1970), particularly the goal of rehabilitation.

Having independently reviewed the entire sentencing record, we conclude that the trial court's sentencing decision was clearly mistaken. McClain v. State, 519 P.2d 811, 813–14 (Alaska 1974). Assault in the fourth degree is a class A misdemeanor, and, as such, it is punishable by a maximum term of one year in jail, a fine of $5,000, or both. AS 11.41.230; AS 12.55.-135(a); AS 12.55.035(b)(3). Given these maximum penalty provisions, it is apparent that the sentence in this case falls near the bottom of the authorized range of sentences for fourth-degree assault. Huletz received a suspended imposition of sentence, with no jail time at all, only a minimal fine ($250), and a modest period of community service (forty hours), which the court allowed Huletz to perform at any time over a period of six months (on average, slightly less than two hours per week). Huletz will be entitled to have his conviction removed from his record in one year if he avoids similar offenses and refrains from any contact with S.M.

It seems self-evident that a sentence such as this—one clearly falling at the bottom of the permissible range of sentences for a given offense—should be reserved for the most mitigated of cases—those near the bottom of the potential range of seriousness for the offense. In the present case, the sentencing court did not purport to find Huletz's offense to be particularly

mitigated, and we are convinced that the record would not have supported such a finding had one been made.

Prior decisions of this court suggest that, in determining whether a case is aggravated or mitigated, the sentencing court must consider the totality of the circumstances relating to the background and personal characteristics of the offender, the seriousness of the conduct involved in the commission of the offense, and the nature and extent of the resulting harm. *See, e.g., State v. Jackson,* 776 P.2d 320, 326–27 (Alaska App.1989). In the present case, the evidence concerning Huletz's background and personal characteristics provides little basis for characterizing his case as particularly mitigated.

On the one hand, Huletz's background is favorable in some significant respects. As the sentencing court noted, Huletz has served in the military; throughout his life he has been a productive member of society. On the other hand, however, the record contains significant negative information concerning Huletz's background and personal characteristics. At forty-one years of age, and with two prior misdemeanor convictions, Huletz is hardly a youthful first offender. While neither of Huletz's prior offenses involved assault, both were class A misdemeanors—the most serious form of non-felony offense. It is significant that one of the prior offenses was alcohol related, as is Huletz's current crime.

It is also significant that Huletz's other offense resulted in a suspended imposition of sentence. A suspended imposition of sentence is a unique disposition: by providing for the eventual set-aside of a conviction, a suspended imposition of sentence offers the offender an incentive for reform and an opportunity to start anew with a clean slate. By its very nature, however, a suspended imposition of sentence is primarily meant to be a one-time opportunity for particularly deserving first-offenders. It is a disposition ill-suited for repeated use with a persistent offender.

At the time of sentencing in his current case, Huletz had already received a suspended imposition of sentence, and, as demonstrated by his renewed criminal misconduct, he failed to take advantage of the unique opportunity for reform that it represented. It is not at all clear why the sentencing court deemed another opportunity appropriate.

Also relevant in this regard is Huletz's attitude toward his current crime. Throughout his trial and sentencing, Huletz remained doggedly unrepentant, clinging to a version of events that the trial court deemed untrue—a version that shifted the blame for Huletz's conduct to his victim. At the sentencing hearing, Huletz provided little indication that he accepted responsibility for his conduct. While Huletz certainly cannot be penalized for declining to admit his guilt, his failure to acknowledge responsibility and his insistence on a version of events that the trial court deemed untrue are additional factors casting doubt on his prospects for reform.

We next consider the evidence in the record concerning the seriousness of Huletz's conduct and the extent of harm he caused his victim; like the evidence concerning Huletz's background, this evidence provides little basis for a particularly mitigated sentence. Huletz struck S.M. repeatedly with his fists and virtually held her hostage in his trailer overnight. As a result of the attack, S.M. suffered not only significant emotional trauma, but also considerable physical pain, which required her to go for treatment to the emergency room. There she was found to have sustained multiple contusions on her face, head, and arms.

The sentencing court seemed inclined to treat Huletz leniently because it found that he did not assault S.M. with the specific intent to injure her but, instead, simply "lashed out" in anger at her, causing her injuries recklessly. Yet such reckless conduct is squarely within the norm for assault in the fourth degree. Indeed, the offense, as defined in AS 11.41.230(a)(1), consists of recklessly causing physical injury to another person; while Huletz's conduct might have been substantially more aggravated than the norm for fourth-de-

gree assault had he acted with the express purpose of inflicting injury on S.M., the fact that he simply "lashed out" violently at S.M. without specifically intending to cause her injuries does not substantially mitigate the offense.

In short, although the nature of Huletz's actions and the magnitude of S.M.'s injuries might not justify a finding that Huletz's conduct was unusually aggravated for a fourth-degree assault, neither would these factors justify a finding that his conduct was particularly mitigated, that is, substantially less serious than conduct typically involved in a case of fourth-degree assault.

Because the present case could not reasonably be deemed mitigated from the standpoint of Huletz's personal background, the seriousness of his conduct, or the extent of the resulting harm, we believe the sentencing court was clearly mistaken in fashioning a sentence that was among the most lenient possible for the offense.

We fully recognize that the sentencing court bears the primary responsibility for determining the importance and relative priority of the *Chaney* sentencing goals in each case. *Nicholas v. State*, 477 P.2d 447, 448–49 (Alaska 1970). And we do not fault the court in this case for emphasizing Huletz's rehabilitation as the most important goal of sentencing. In our view, however, the sentence imposed below fails to satisfy any of the *Chaney* sentencing goals, including the goal of rehabilitation.

Despite Huletz's apparently longstanding problem with alcohol, his past conviction for another alcohol-related crime, and

his past failure to deal with this problem, the court declined to require Huletz to submit to alcohol screening or to participate in any form of substance-abuse therapy. And despite the trouble Huletz evidently has in managing his anger, the court similarly declined to require him to engage in anger-management counseling. Considering that Huletz's current offense was plainly alcohol related, that Huletz has insisted on a false explanation of the offense, and that he has consistently shifted blame for his conduct to his victim, the sentencing court's failure to provide for any meaningful form of treatment aimed at Huletz's rehabilitation seems inexplicable. We fail to see how the sentence, as currently structured, serves the goal of rehabilitation.

Neither does the sentence satisfy the *Chaney* goals of deterrence and community condemnation.[2] Huletz's sentences for his past crimes have included informal probation and short periods of time in jail, yet these measures have apparently failed to deter his continued criminality. There is no reason to suppose that the small fine and modest community service requirement in his current sentence will deter him from future misconduct, when sterner measures have already failed. Nor can such a sentence reasonably be expected to deter other similarly situated offenders.

By the same token, Huletz's sentence seems ill-suited to express community condemnation for the type of violent crime involved in this case. The state presents a cogent argument that assaults involving domestic violence occur with alarming frequency in our society, often having devastating consequences.[3] When a court im-

---

2. The remaining *Chaney* sentencing goal—isolation of the offender for the protection of society—comes into play primarily in cases involving offenders who have established themselves to be particularly dangerous and incapable of rehabilitation, thereby demonstrating the need for prolonged incarceration in the interest of public safety. The state does not argue that Huletz falls into this category of offender, and the record would not support such a conclusion. The sentencing court properly recognized that the present case did not call for a sentence designed to isolate Huletz for purposes of public safety.

3. The following passage from a recent report by Alaska's Council on Domestic Violence and Sexual Assault is illustrative:

A woman is beaten every 18 seconds and 4,000 battered women are killed every year in the United States. Nationwide, more than one million abused women each year seek medical assistance for injuries caused by battering. In Alaska, 26% of adult women have been physically abused by a spouse sometime during their lives and most of the battered women were abused at least once a month. It is estimated that a minimum of 13,200 women living in Alaska have required medical

poses a mitigated sentence in a domestic assault case that is not particularly mitigated, it unduly depreciates the seriousness of this type of criminal misconduct: such a sentence inevitably creates the impression that domestic violence is a form of assault which is somehow less worthy of societal condemnation (and therefore somehow less serious) than other forms of assault. The appearance that the justice system deems domestic assaults to be trivial can only be exacerbated when unusually lenient treatment is accorded to an offender with a prior criminal record.

We by no means suggest that all instances of fourth-degree assault involving domestic violence should result in jail sentences; to the contrary, we recognize the need for, and encourage the use of, creative alternatives to incarceration, particularly in misdemeanor cases. Nor do we intimate that fourth-degree assault cases involving domestic violence should be targeted for categorically harsher treatment than other types of fourth-degree assault. Our concern is precisely the opposite: we seek only to assure that assaults involving domestic violence be given parity—the same serious consideration and treatment that is typically given to assaults occurring outside the home.

The danger we perceive is that, as a category, fourth-degree assaults involving domestic violence may receive treatment that is more lenient than other types of fourth-degree assault. The very fact that domestic assaults are so commonplace, and that they typically occur in the privacy of the home—usually between people who are intimate or related—invites an unwarranted complacency toward this form of criminal violence. Courts exposed day in and day out to such cases may find it altogether too easy, in the long run, to adopt an attitude of resigned toleration—to regard domestic assault as conduct which, though regrettable, is nevertheless understandable and inevitable.

Yet this type of complacency must be vigorously resisted. A violent and unprovoked attack against a spouse or domestic partner is no more acceptable, and can be no more tolerated, than a like attack against a stranger. In the present case, as the sentencing court found, Huletz was angry, frustrated and highly intoxicated; he "lashed out" violently. In the eyes of the law, the fact that he selected a domestic partner rather than a stranger as the target of his violence can provide no occasion for leniency.

The sentence imposed by the district court is DISAPPROVED.

treatment by a doctor or hospital for injuries sustained by abuse at some time in their life. In 1990, fifty percent of female murder victims in Alaska were killed by their husbands or boyfriends. More than half of all homeless women are on the street because they are fleeing domestic violence. There are nearly three times as many animal shelters in the United States as there are battered women shelters.

Children raised in violent homes suffer the effects of living in this environment and are at higher risk for physical and sexual abuse. Children raised in violent homes are 1500% more likely to be physically abused or seriously neglected. Nearly fifty percent of abusive husbands batter their wives when they are pregnant, making these battered women four times more likely to bear infants of low birth weight. These women also have twice as many miscarriages as non-battered women. Council on Domestic Violence and Sexual Assault, Annual Report to Governor Hickel and the Alaska Legislature at 2 (March 1992).