Larry PARROTT, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,**
Appellee.

No. A–7829.

Court of Appeals of Alaska.

May 2, 2003.

Rex Lamont Butler, James Adam Bartlett, Rex Lamont Butler & Associates, Anchorage, for Appellant.

John E. McConnaughy III, Assistant Municipal Prosecutor, William A. Greene, Municipal Attorney, Anchorage, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

Following a bench trial, Larry Parrott was convicted of soliciting an undercover policewoman who was posing as a prostitute. He argues that District Court Judge Sigurd E. Murphy should have granted his motion for judgment of acquittal because he did not solicit the police officer—she solicited him. He also argues that he was entrapped by the police and that his arrest violated due process, equal protection, and the separation of powers. Lastly, Parrott argues that the court was clearly mistaken in refusing to impose a suspended imposition of sentence and in ordering him to write an essay on the ills of prostitution. We reject Parrott's claims and affirm the district court's decision.

### Facts and proceedings

At about midnight on May 27, 2000, Parrott drove his pickup truck by the corner of 32nd Avenue and Spenard Road, where Anchorage Police Officer Bianca Dodson was posing as a prostitute. A short while later, Parrott returned to that intersection and stopped at the stop sign. After Parrott had lingered at the stop sign longer than necessary to make a turn, Officer Dodson approached. Parrott asked Dodson how she was doing, and she responded that she was "just looking around." Parrott asked Dodson several times if she was associated with the police, and she said she was not. Dodson then told Parrott that her prices were $20 for oral sex and $60 for sex. Parrott told Dodson she could get in the truck. Dodson asked Parrott what they were going to do, and he said he wanted oral sex. Dodson asked Parrott if he had any money and he reached for something, which Dodson assumed was his wallet. Dodson then signaled other officers who were observing the sting operation and Parrott was cited for soliciting prostitution.[1]

At the close of the Municipality's case, Parrott moved for a judgment of acquittal, which the court denied. Parrott presented no evidence. Judge Murphy convicted Parrott of soliciting prostitution and sentenced him to a $1,000 fine with $500 suspended, 10 days of jail with 10 days suspended, and 24 hours of community work service. Judge Murphy placed Parrott on probation for 1 year and directed him within 30 days to write an essay on the ills of prostitution.

Parrott appeals his conviction and sentence.

### Discussion

*Did the court err by denying Parrott's motion for judgment of acquittal?*

Parrott argues that Judge Murphy should have granted his motion for judgment of acquittal because he did not solicit Officer Dodson for the purpose of prostitution. He argues that he was a passive participant in the encounter and that Officer Dodson solicited him by approaching his truck and telling him what she charged for sex. He argues that even if he had invited Officer Dodson into his truck for sex, he committed no crime because he did not initiate the contact.

The first question raised by this appeal is whether Parrott can be convicted

---

1. Anchorage Municipal Code (AMC) 8.65.030(A).

under the municipal code for soliciting an act of prostitution. As we acknowledged in *State v. Burden*,[2] under the common law a person cannot be convicted as an accomplice to an offense unless that person would face criminal liability for the completed offense.[3] If the Municipal Assembly intended prostitutes, but not their customers, to be punished for their part in a completed act of prostitution, then—absent indications to the contrary in the language or history of the soliciting ordinance—it is arguable that the common-law presumption applies and that the ordinance does not prohibit a prospective customer's solicitation of a prostitute (only a prostitute's or a procurer's solicitation of a prospective customer).

Anchorage Municipal Code (AMC) 8.65.020 makes it unlawful for any person to "knowingly engage in prostitution or assignation." Prostitution is defined as "the giving or receiving of the body for sexual conduct for hire."[4] The Municipality argues that this definition plainly applies to both the prostitute, who gives his or her body for hire, and the prostitute's patron, who receives the body in return for consideration.

■ While this is one reasonable interpretation of the ordinance, the opposite conclusion is equally plausible.[5] The Alaska prostitution statute, as originally drafted, defined prostitution as "the giving or receiving of the body *by a female* for sexual intercourse for hire."[6] (In 1979, the Alaska Supreme Court struck the "by a female" language because it discriminated against female prostitutes by excluding the conduct of male prostitutes.[7]) This parallel language in the former Alaska statute, which plainly encompassed only the prostitute's conduct, effectively refutes the

Municipality's claim that the Anchorage ordinance unambiguously refers to both prostitutes and their customers.

Even assuming that the customer of a prostitute is not criminally liable for prostitution under the municipal code, the Assembly may have intended to depart from the common-law rule and encompass the conduct of potential patrons when it drafted the soliciting ordinance. The parties have advanced no legislative history that sheds light on the Assembly's original intent, and we have found none. However, the enforcement history of the soliciting ordinance resolves any ambiguity in the ordinance's language.[8] The Municipality has long prosecuted the prospective customers of prostitutes for soliciting prostitution.

■ Twenty years ago, in *Anchorage v. Afualo*,[9] the Municipality appealed two district court decisions holding that the Municipality could not charge men who had approached undercover policewomen for sex with soliciting prostitution because the Alaska soliciting statute made only the conduct of prostitutes illegal. This court reversed the district court, holding that the Municipality could apply its soliciting ordinance to customers because Anchorage was a home rule city with broad powers of legislation and because the state legislature had not sought statewide uniformity in regulating commercial sexual relations.[10] After *Afualo*, the Municipal Assembly reenacted and renumbered the soliciting ordinance, adding the "knowingly" mental state but making no other changes.[11] The Assembly kept the same definition of prostitution.[12] In retaining this language, the Assembly impliedly adopted the interpre-

2. 948 P.2d 991 (Alaska App.1997).

3. *Id.* at 992; *see also Howard v. State,* 496 P.2d 657, 660 (Alaska 1972).

4. AMC 8.65.010.

5. The interpretation of a statute or ordinance is a question of law we review de novo. *Sosa v. State,* 4 P.3d 951, 953 (Alaska 2000).

6. Ch. 104, § 1, SLA 1955 (emphasis added).

7. *Plas v. State,* 598 P.2d 966 (Alaska 1979).

8. *See* Norman J. Singer, *Sutherland Statutory Construction,* § 49.03, at 14–15 (6th ed.2000).

9. 657 P.2d 407 (Alaska App.1983).

10. *Id.* at 408–09.

11. Anchorage Ordinance (AO) 98–59(S), at 56 (comparing former AMC 8.14.030 with AMC 8.65.030(A)).

12. Anchorage Ordinance (AO) 98–59(S), at 55–56 (comparing former AMC 8.14.010 with 8.65.010).

tation of the ordinance discussed in *Afualo*.[13] We therefore conclude that regardless of the Assembly's original intent in drafting the soliciting ordinance, it has since ratified the Municipality's practice of prosecuting the prospective customers of prostitutes.

The question remains whether Parrott's conduct amounted to soliciting for the purpose ·of prostitution under AMC 8.65.030(A). That ordinance makes it unlawful for any person to "knowingly solicit, induce, entice, invite, or procure another for the purpose of prostitution[.]" Neither the Anchorage Municipal Code nor the Alaska Statutes define these terms. "Unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage."[14] The predominant meaning of these terms, taken together, is to tempt or entice;[15] however, "solicit" and "invite" can also mean simply to "ask."[16] Presumably the Assembly included all these terms in the ordinance because it meant to encompass this broad range of meaning. Furthermore, Parrott has pointed to nothing in the language of AMC 8.65.030(A) to indicate that only the person who initiates the dialogue that leads to a solicitation for sexual services can commit the offense of soliciting for the purpose of prostitution.

The district court found that Parrott committed the offense of soliciting when he invited Officer Dodson into his truck for the purpose of oral sex. As the court explained:

> After being told the price of the goods, so to speak, he then invited her into his vehicle. Then she said what are we doing, he said we're having oral sex. And whether he used a euphemism for that or not, that was the statement. At that juncture with all the other evidence, he did not need to pull out money and hand it to her in order to reach the level of what the law requires as a knowing solicitation, inducement, enticement, invite, or procurement. He had

invited her into his vehicle for the purpose of having oral sex contrary to the law.

Parrott challenges the district court's factual finding that he told Officer Dodson he wanted oral sex. But Officer Dodson testified that Parrott, after telling Dodson to get in the truck, "indicated we were going to do oral sex, he said that." Later, Dodson testified that Parrott had said either "a blow job" or "oral sex." During cross examination, Parrott's attorney asked Dodson: "So, Mr. Parrott says something that you associate with oral sex, could have been oral sex, could have [been] blow job, but whatever it was, it was something associated with oral sex?" Officer Dodson responded: "That's correct."

There was no ambiguity in Officer Dodson's testimony that Parrott asked her for oral sex. Indeed, Parrott did not suggest in closing argument that there was ambiguity in Officer Dodson's testimony on this issue. Given this evidence and argument, we conclude that there was substantial evidence to support the district court's finding that Parrott had invited Dodson into his truck for oral sex.

Parrott also complains that Officer Dodson's police report defined the crime of soliciting differently than the Anchorage ordinance. The police report used the phrase "suggesting and agreeing" in lieu of the terms "solicit, induce, entice, invite, or procure." Parrott argues that under this "misstatement of law" in the police report "it makes no difference who actively solicits whom." Parrott advances this argument to support his claim that Officer Dodson, operating under a misconception of the law, arrested him for non-criminal conduct. But Judge Murphy convicted Parrott under AMC 8.65.030(A). Consequently, the wording of the police report and Officer Dodson's understanding of the ordinance are irrelevant.

After reviewing the evidence, as we must, in the light most favorable to upholding the

---

**13.** *See* Singer, *Sutherland Statutory Construction*, § 49:09, at 108–09 ("Legislative adoption is presumed conclusive when repeated reenactments follow a notorious practical interpretation.").

**14.** *State, Dep't of Revenue v. Debenham Elec. Supply Co.*, 612 P.2d 1001, 1001 (Alaska 1980).

**15.** *See* Webster's New World College Dictionary (3d ed.1997) (definitions for solicit, induce, entice, invite).

**16.** *See id.* (definitions for solicit, invite).

verdict, we conclude that there was "adequate relevant evidence to support a conclusion by a reasonable mind that there was no reasonable doubt" as to Parrott's guilt.[17] The court thus properly held that Parrott had solicited prostitution under AMC 8.65.030(A) when he invited Officer Dodson into his truck for the purpose of oral sex. We therefore affirm the court's decision to deny Parrott's motion for judgment of acquittal.

*Did the court abuse its discretion by refusing to dismiss the case on the ground of entrapment? Did the police conduct violate due process, equal protection, and the separation of powers doctrine?*

Parrott next argues that the district court abused its discretion by not dismissing the case based on his claim that Officer Dodson's conduct amounted to entrapment. Parrott also argues that the district court failed to properly address the due process concerns implicit in his entrapment defense.

■ During closing argument, Parrott stated that he was "not arguing entrapment for the simple reason that the case law wants extreme and outrageous conduct." But Parrott went on to urge the court to "look at the situation and make a determination about whether, under these circumstances, there is entrapment." Judge Murphy declined to address the entrapment issue, noting that Parrott had not filed the required pre-trial notice and ruling that it was "not appropriate" for Parrott to raise that defense for the first time in closing argument.[18] The court did note that the entrapment argument "if you

want to call it that ... does go along with his other argument."

■ We conclude that Parrott waived his entrapment claim because he did not raise it below.[19] Even if he did attempt to raise the defense for the first time in closing argument, Judge Murphy acted within his discretion by refusing to consider the claim.[20]

■ Parrott also argues that the police denied him due process and equal protection by arresting him based on a standard police form that included an erroneous interpretation of AMC 8.65.030(A). He argues that the Anchorage Police Department's use of that form violated the separation of powers doctrine by vesting legislative authority in the executive branch. Because none of these claims were raised below, we treat them as waived.[21] In any event, as the district court found, Parrott's citation put him on notice that he was charged with soliciting prostitution under AMC 8.65.030(A). Given that Parrott was properly convicted for violating this ordinance, we find no infringement of his constitutional rights.

*Was the court clearly mistaken in refusing to impose a suspended imposition of sentence and in requiring Parrott to write an essay?*

Parrott argues that Judge Murphy was clearly mistaken in refusing to impose a suspended imposition of sentence. He argues that his rehabilitation is a "foregone conclusion" because he is remorseful, aware of the stigma carried by his offense, and a forty-eight-year-old first-time offender. By statute, sentencing courts have discretion wheth-

17. *See Ross v. State,* 586 P.2d 616, 617–18 (Alaska 1978).

18. *See* Alaska R.Crim. P. 16(c)(5), which provides:

*Notice of Defenses.* Unless a different date is set by the court, no later than 10 days prior to trial, the defendant shall inform the prosecutor of the defendant's intention to rely upon a defense of alibi, justification, duress, entrapment, or other statutory or affirmative defense. Failure to provide timely notice under this rule shall entitle the prosecutor to a continuance. If the court finds that a continuance is not an adequate remedy under the circumstances of

the case, the court may impose other sanctions, including prohibiting the defendant from asserting the designated defense. The defendant shall give notice of an insanity defense or a defense of diminished capacity due to mental disease or defect in compliance with AS 12.47.

19. *See Wettanen v. Cowper,* 749 P.2d 362, 364 (Alaska 1988) (holding that arguments not raised below are considered waived on appeal absent plain error).

20. *See* Alaska R.Crim. P. 16(c)(5).

21. *See Wettanen,* 749 P.2d at 364.

**6** 

er to impose a suspended imposition of sentence in a given case.[22]

■ At trial, Parrott asked the court to impose a suspended imposition of sentence because he had no criminal history and his offense was not aggravated. Parrott's counsel told the court that Parrott was embarrassed by the criminal case but not that he was remorseful. Nor did Parrott express remorse in his statement to the court. Judge Murphy concluded that a suspended imposition of sentence was not appropriate given that Parrott was close to fifty years old and should have known better. And although Judge Murphy focused his remarks on deterrence and rehabilitation, he did not find that Parrott's rehabilitation was a "foregone conclusion." Rather, he stated that he was concerned about deterring Parrott and others, and about "what we can do in a rehabilitative sense to make sure that you don't come back here again." Given this record, we conclude that Judge Murphy was not clearly mistaken in deciding that a suspended imposition of sentence would not satisfy the sentencing goals of deterrence and rehabilitation in Parrott's case.

■ Parrott also argues that the court was clearly mistaken in requiring him to write an essay on the ills of prostitution.

Parrott does not claim that Judge Murphy had no authority to order him to write an essay;[23] instead, he argues that the essay requirement violates his right against self-incrimination. We find no merit in this argument. As the Municipality points out, Judge Murphy did not order Parrott to admit his crime; he ordered Parrott to write an essay on the harm to society of prostitution. A probationer cannot validly invoke the privilege against self-incrimination when there is "no real or substantial hazard of incrimination."[24] The burden of establishing a hazard of incrimination is on the claimant. Parrott has not established that he has a valid claim of privilege with regard to the mandated essay.[25] We therefore reject Parrott's claim that the essay requirement violates his right to silence.

*Conclusion*

The judgment of the district court is AFFIRMED.

**22.** *Nattrass v. State*, 554 P.2d 399, 401 (Alaska 1976) (citing AS 12.55.085(a)).

**23.** *See* AS 12.55.015 (listing authorized sentences).

**24.** *Gyles v. State*, 901 P.2d 1143, 1148 (Alaska App.1995) (quoting *State v. Gonzalez*, 853 P.2d 526, 530 (Alaska 1993)).

**25.** *See id.* at 1149.