**LANA C., Appellant,**

v.

**CAMERON P., Appellee.**

No. S–10272.

Supreme Court of Alaska.

March 11, 2005.

---

Lana C.; pro se, Anchorage, Appellant.

Rhonda F. Butterfield, Law Offices of David W. Baranow, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Lana C. appeals the superior court's order finding her in contempt for violating the terms of a non-disclosure order that had been entered as part of a child custody settlement. The non-disclosure order restricted Lana's right to disclose allegations of past child abuse committed by her former husband against their daughter. Lana was found to have violated that order when she mentioned the alleged past abuse in a petition for a domestic violence protective order sought on behalf of her daughter. In its contempt order, the superior court expanded the original non-disclosure order by prohibiting Lana from making any allegations of child abuse against her ex-husband in any court for any purpose. Because we find that an order that seeks to bar an individual from presenting relevant evidence to a court in a domestic violence proceeding is void as contrary to public policy, we reverse the finding of contempt and vacate the order prohibiting Lana from making any accusations of child abuse against her ex-husband.

## II. FACTS AND PROCEEDINGS

Lana C. and Cameron P. were married in 1992 and had a daughter, Barbara, the same

year.[1] The couple separated in April 1997.

In April 1997 the Division of Family and Youth Services (DFYS) investigated a report that Cameron intentionally bit Barbara on the cheek and left a mark. The investigation did not confirm the allegations of abuse but DFYS noted inappropriate parenting by Cameron. In June 1997 Cameron was convicted of assaulting Lana. Also in June 1997, Shirley Webster, a therapist at the Anchorage Center for Families, reported that Barbara had disclosed that her father had touched her in an inappropriate sexual manner. Webster suspected possible sexual abuse by the father and notified DFYS. The DFYS investigation was not actively pursued at that time because DFYS determined that Barbara was re-telling segments of past incidents already investigated.

In March 1998, one month after Cameron filed for divorce, Lana contacted DFYS to report concerns regarding Cameron's possible sexual abuse of Barbara. After receiving the report of harm, Anchorage Police Detective Paul Ard and DFYS case worker Edward Sheridan interviewed Barbara. During the interview, Barbara, who was then five years old, reported several incidents of sexual abuse committed against her by her father. Caseworker Sheridan reported that Barbara's physical examination "revealed an abnormal genital exam with suspicions of sexual abuse." Cameron exercised his constitutional right to remain silent and was not interviewed by DFYS. In January 1999 DFYS determined that sexual abuse was substantiated and identified Cameron as the perpetrator. The DFYS caseworker further stated that "[o]ur position is that, as a victim of sexual abuse, [Barbara] should not have contact with her abuser." The district attorney declined to prosecute Cameron.

Superior Court Judge Rene J. Gonzalez presided over the divorce and custody proceedings. In April 1998 the superior court entered a temporary interim order that extended a domestic violence protective order obtained on behalf of Barbara, and granted Lana sole legal and physical custody of her daughter. The superior court also appointed Pamela Montgomery as guardian ad litem to represent Barbara.

In March 1999 Lana and Cameron were divorced. The issues of child custody, visitation, and support were bifurcated from the divorce proceedings and addressed at a hearing on January 25, 2000. At that hearing, the parties informed the court that they had reached a settlement and placed the details of the settlement agreement on the record. Lana refused to sign the agreement. In an order issued on January 27, 2000, the superior court found that "the signature of [Lana] is not necessary for enforcement of the parties' child custody and support agreement" because the agreement had been accepted by both parties in open court at the hearing. The superior court also approved the settlement agreement and incorporated it into the findings, conclusions, and divorce decree.

Under the settlement agreement, Lana was granted legal custody of Barbara. The agreement provided that Barbara would live primarily with her mother but would also participate in regular supervised visits with her father and engage in therapy with him on a schedule determined by Dr. Karen Henderson–Dixon. Cameron's visitation rights were to be increased progressively over time through mutual agreement or decision by an arbitrator. The agreement also stated that each parent "shall have full and open access to the child's medical and educational records and shall enjoy the opportunity to attend and fully participate in all school conferences and major medical/dental consultations involving the child."

The agreement contained two additional provisions which are material to the contempt order now being appealed. The first provision stated:

Allegations regarding child abuse have been made against the father. Given [Barbara's] young age, the parties are in agreement that it is unlikely that the truth or falsity of these allegations will ever be completely known. The parties agree that civil child custody litigation to prove or disprove these allegations will no longer be

1. This opinion uses pseudonyms for the names of the parties and their child.

pursued by either party in any tribunal, court or forum, judicial or administrative.

Another provision stated:

> The parties agree that [Barbara] should not be subjected to undue stress as it appears that this may cause or exacerbate physical sickness in the child. In this connection, the parties agree that the issues of alleged past abuse or assault shall not be referred to, mentioned to or reiterated to the child or to others by either parent except as may be determined necessary in a therapeutic setting only in the sole discretion of Dr. Karen Henderson–Dixon. The parties agree that the Court's interim mutual third party nondisclosure order [2] shall remain in effect on a permanent basis.

On August 31, 2000, Cameron visited Barbara's school towards the end of the school day, while Barbara was still in class. Cameron stated in an affidavit that "[he] arrived just a few minutes early" and that "[his] intention was to wait until [Barbara] had left her classroom for the day before speaking with her teacher." There was no school conference scheduled during that week, but Cameron had left a message with the school receptionist stating that he planned to visit Barbara's teacher. Lana alleges that when she encountered Cameron at the school that day, he said that he knew Barbara's room number and that he would "get her eventually."

On the same day, Lana filed a petition for a twenty-day and a long-term domestic violence protective order. The petition required that the petitioner describe the domestic violence committed by the respondent, listing the most recent incident first. In response to this question, Lana responded:

> [Cameron] was at our daughter's school, [and] told me he knew her room number and told me he would "get her eventually." He appeared like he did when he was ready to hit me when we were married. While we were married, he assaulted me

nine separate times. He was convicted of assaulting me [ ]. Later, DFYS confirmed child sexual abuse. He also bit our daughter's face, finger, pulled her hair, and [illegible] name calling i.e. "Stupid Fucking Bitch."

The petition for a protective order also included a section on visitation. The petitioner was required to provide an answer to the following prompt:

> Visitation. I understand that the court may only grant visitation to the respondent if my safety and the safety of the children can be protected. If the court considers visitation, these are my safety concerns. . . .

Lana responded as follows:

> The decree requires supervised visits only. [Cameron] has sexually and physically abused our daughter, so a professional supervisor is required.

Later that day, Magistrate R. Brock Shamberg entered an ex parte twenty-day protective order, which included the following exceptions for therapy and visitation: "Therapy sessions may continue as directed by Dr. Karen Henderson–Dixon. Visitation may be implemented on a supervised basis by the doctor if she believes it beneficial for [Barbara]."

On September 5, 2000, counsel for Cameron filed a motion for order to show cause why Lana should not be held in contempt for violating the court order not to discuss Cameron's alleged past abuse of Barbara with a third party, and for interfering with Cameron's access to Barbara's school and educational records.

On September 15, 2000, a hearing was held before Magistrate Shamberg on Lana's request for a long-term protective order. Cameron and his attorney were not present at the hearing. The magistrate entered a six-month protective order. On October 11, 2000, another hearing was held before Magistrate Shamberg regarding this order. Both

---

**2.** The temporary interim order and domestic violence protective order provided in part: "Neither party nor any witness to this proceeding may discuss the child custody issues or other issues involving the parties' child with any other witness or other person, except for legal counsel, medical or mental health care providers for the child or government agents having an official need to discuss information involving the child."

parties and their attorneys were present. At the beginning of the hearing, the magistrate indicated that the previous six-month order had been vacated. After hearing testimony about the incident at Barbara's school, the magistrate entered another six-month protective order but did not enter any orders regarding visitation. On October 23, 2000, Cameron filed objections to Magistrate Shamberg's rulings; those objections were forwarded to the superior court for consideration.

On December 4, 2000, Judge Gonzalez presided over a hearing on Cameron's motion for order to show cause why Lana should not be held in contempt of court. In her testimony, Lana admitted that she stated in her application for a protective order that her daughter had been abused by Cameron. She also testified that her counsel, who filled out part of the petition for her, told her that the petition for a protective order was not child custody litigation. In his closing argument, Cameron's attorney requested that the court find Lana in contempt, vacate the domestic violence order, and award Cameron attorney's fees for the hearing.

On June 8, 2001, the superior court found that there was insufficient evidence to support a finding that Cameron had committed a crime involving domestic violence and vacated the long-term domestic violence order. On the same day, the superior court entered findings of fact, conclusions of law and judgment regarding contempt. The superior court noted that Lana's petition for a protective order included allegations that Cameron had committed child sexual abuse and found that Lana "knowingly and willfully violated the court order that prohibited her from continuing to make allegations of child sexual abuse against [Cameron]." The superior court entered judgment, which included an order that Lana "shall not make any accusations against [Cameron] of child sexual abuse in any petitions, demands or requests for relief filed in any court for any and all purposes." The trial court further ordered that

Lana "shall not make any statements to any other person regarding alleged past child abuse except, as may be determined necessary to the child's therapeutic counselor Dr. Karen Henderson–Dixon." Finally, the superior court ordered Lana to pay "all costs and attorney fees incurred in this civil contempt proceeding."

On August 1, 2001, the superior court awarded Cameron $1,505.24 in attorney's fees and costs for the civil contempt proceedings. Lana now appeals the superior court's finding of contempt, the superior court's modification of the non-disclosure order, and the award of attorney's fees and costs to Cameron.

## III. STANDARD OF REVIEW

"We exercise our independent judgment when reviewing the legal interpretation of property settlements and child custody agreements that are incorporated into divorce decrees."[3] We review de novo contempt citations imposed under Alaska Civil Rule 90(b).[4] We also exercise our independent judgment in deciding whether a court has made factual findings satisfying each element necessary for indirect contempt.[5] But we review for clear error factual findings a court makes in deciding whether to hold a respondent in contempt.[6]

## IV. DISCUSSION

### A. The Finding of Contempt

Lana appeals the finding of contempt on several grounds. She argues that she did not violate the terms of the non-disclosure order, that the superior court's interpretation of the order to include domestic violence proceedings deprived her of the protection of Alaska laws, that any violation of the order was not willful, and that the superior court erred in characterizing the proceeding as civil contempt and therefore failed to afford her the procedural protections required in a criminal contempt proceeding.

---

3. *Brown v. Brown,* 983 P.2d 1264, 1267 (Alaska 1999).

4. *Anchorage Police & Fire Ret. Sys. v. Gallion,* 65 P.3d 876, 879–80 (Alaska 2003).

5. *Id.* at 880.

6. *Id.*

The parties disagree about whether the statements made by Lana in her domestic violence petition violated the terms of the order. Cameron argues that Lana's statements that "DFYS confirmed sexual abuse" and that Cameron had "sexually and physically abused" Barbara violated the portion of the order that prohibited the parties from mentioning the allegations of the past abuse and assault because "[t]he parties agree that [Barbara] should not be subjected to undue stress as it appears that this may cause or exacerbate physical sickness in the child." Lana argues that the purpose of this provision was to protect Barbara from experiencing a stressful reaction to allegations of past abuse. She contends that the parties intended this provision to be limited to discussing the alleged past abuse with Barbara or with other individuals who might mention the allegations to Barbara. Cameron argues that Lana also violated the portion of the order providing that neither party will pursue "civil child custody litigation to prove or disprove these allegations [of child abuse]" because Lana filled out the section of the domestic violence petition relating to child custody. Lana replies that by filing a petition for a protective order she was not pursuing civil child custody litigation.

As an initial matter, we note that Lana's interpretation of the order appears more persuasive. Because the order states that the prohibition on disclosure is made in connection with the parties' desire to spare Barbara undue stress, the non-disclosure provision appears to have been intended to protect Barbara from being exposed to disparagement of one parent by the other or by individuals informed of the allegations by the other parent. As such, this provision apparently does not apply to statements made to the court in a domestic violence order. It also appears that Lana did not violate the order's prohibition on pursuing civil child custody litigation to prove the sexual abuse charges. Lana already had legal and physical custody at the time of the petition, and her attorney told the magistrate at the hearing on the long-term protective order that they did not believe Cameron's visitation rights should change. But we need not determine whether Lana violated the order because we find that even if the terms of the order could be interpreted to bar Lana from raising past incidents of child abuse in a domestic violence proceeding, such an order would be void as against public policy. For the same reason, we do not reach the question of whether the superior court erred in characterizing the proceeding as one for civil rather than criminal contempt.

Alaska courts have recognized that the rules of evidence "establish a strong public policy that all relevant evidence should be available to the trier of fact to ensure a fair and just decision." [7] Alaska Rule of Evidence 404(b)(4) expressly provides that evidence of other crimes involving domestic violence are admissible in criminal prosecutions for crimes involving domestic violence. This rule reflects the policy that judges and jurors must have access to this information to determine whether "the defendant characteristically commits such acts, so that the defendant's character can be taken as circumstantial evidence that the defendant acted true to character during the episode being litigated." [8] Similarly, a judge or magistrate hearing a petition for a domestic violence protective order will find information about past episodes of domestic violence relevant in determining whether a petitioner is in danger and needs the protection of a restraining order. All too often, domestic violence has tragic and irreversible consequences; as one commentator has noted, "[o]f all the women murdered in the United States in a given year, approximately thirty percent lose their lives to husbands or boyfriends." [9] It is vital that the court in a domestic violence pro-

---

7. *Russell v. Municipality of Anchorage*, 706 P.2d 687, 693 (Alaska App.1985).

8. *Bingaman v. State*, 76 P.3d 398 (Alaska App. 2003).

9. Alison J. Nathan, Note, *At the Intersection of Domestic Violence and Guns: The Public Interest Exception and the Lautenberg Amendment*, 85 CORNELL L.REV. 822, 824 (2000). As the court of appeals has recognized, fifty percent of female murder victims in Alaska in 1990 were killed by their husbands or boyfriends. *State v. Huletz*, 838 P.2d 1257, 1261 n. 3 (Alaska App.1992) (quoting Council on Domestic Violence and Sexual Assault, *Annual Report to Governor Hickel and the Alaska Legislature* 2 (1992)).

ceeding have all available relevant evidence in making its determination.[10] Evidence of past alleged incidents of domestic violence is particularly useful in light of the rate of recidivism among domestic violence offenders.[11]

We therefore conclude that a private agreement that seeks to bar an individual from presenting relevant evidence to a court in a domestic violence proceeding, or a court order implementing or enforcing such an agreement, is unenforceable as contrary to public policy. Our holding is in keeping with other jurisdictions that have found that settlements or agreements preventing an individual from providing evidence relevant to litigation or investigations are contrary to public policy and therefore unenforceable.[12] To the extent that the non-disclosure order prohibited Lana from mentioning Cameron's alleged child abuse in her domestic violence petition, that order was unenforceable and cannot form the basis of a finding of contempt.

### B. The Modification of the Non–Disclosure Order To Include Future Conduct

■ In its contempt order, the superior court expanded the terms of the non-disclo-

sure order, ordering that Lana "shall not make any accusations against [Cameron] of child sexual abuse in any petitions, demands or requests for relief filed in any court for any and all purposes." This order appears to bar Lana not only from discussing the past allegations, but also from reporting any future instances of child abuse committed by Cameron. Under its terms the order would, for example, prohibit Lana from seeking a protective order or informing the court if she discovered that Cameron had sexually assaulted their daughter. For the same reason that a court order cannot prevent an individual from providing relevant evidence regarding past allegations of sexual abuse in a domestic violence proceeding, an order seeking to prevent an individual from reporting future criminal behavior to a court is contrary to public policy and therefore void.[13]

### C. Attorney's Fees and Costs

Lana also appeals the award of attorney's fees and costs. Our disposition of the issues on appeal clearly establishes that Lana is the prevailing party. The award of costs and fees to Cameron is therefore vacated, and the case is remanded to permit Lana to apply for

---

**10.** AS 11.56.745, which provides that it is a crime to interfere with the report of a crime involving domestic violence, also reflects the public's interest in the enforcement of domestic violence laws.

**11.** *See* Nathan, *supra* note 9, at 823–24 (discussing the high recidivism rate associated with domestic violence); *see also Huletz*, 838 P.2d at 1261 n. 3 (quoting Council on Domestic Violence and Sexual Assault, *Annual Report*, at 2, which found that most victims of spousal battering in Alaska "were abused at least once a month").

**12.** *See, e.g., EEOC v. Astra USA, Inc.*, 94 F.3d 738, 744–45 (1st Cir.1996) (holding that settlement agreements prohibiting employees who had made sexual harassment claims from discussing the incidents that gave rise to their claim with EEOC investigators are void as against public policy); *In re JDS Uniphase Corp. Sec. Litig.*, 238 F.Supp.2d 1127, 1137 (N.D.Cal.2002) (holding that to extent confidentiality agreements preclude employees from assisting in securities fraud investigations, those agreements conflict with public policy); *Mary R. v. B. & R. Corp.*, 149 Cal.App.3d 308, 196 Cal.Rptr. 871, 875–76 (1983) (finding that court order prohibiting set-

tling parties in civil suit involving allegations that doctor sexually abused patient from discussing allegations with investigators from agency charged with regulating medical profession violates public policy and will not be enforced).

**13.** The parties have not raised the question of whether Lana is barred from challenging the validity of the underlying non-disclosure order in an appeal from the finding of contempt. There is a split among the jurisdictions that have examined this question. *See, e.g., United States v. Terry*, 17 F.3d 575, 579 (2d Cir.1994) (holding that defendant cannot collaterally attack court order in contempt proceeding concerning defendant's violation of that order); *Weidner v. State*, 764 P.2d 717, 721 (Alaska App.1988) (same); *State v. Alston*, 256 Kan. 571, 887 P.2d 681, 690 (1994) (same); *Dep't of Rev. v. Universal Foods Corp.*, 318 Or. 78, 862 P.2d 1288, 1291–92 (1993) (same). *But see People v. Gonzalez*, 12 Cal.4th 804, 50 Cal.Rptr.2d 74, 910 P.2d 1366, 1374–76 (1996) (rejecting collateral bar rule). Because the parties have not briefed this issue, we decline to address the potential applicability of the collateral bar rule in this case. Moreover, we are not vacating the superior court's underlying non-disclosure order but simply interpreting it in a manner that does not contravene public policy.

attorney's fees and costs incurred in the contempt proceeding before the superior court.[14]

## V. CONCLUSION

The finding of contempt is REVERSED. The order prohibiting Lana from making any accusations of child sexual abuse against Cameron in any court for any purpose is VACATED. The award of attorney's fees and costs to Cameron is VACATED and the case is REMANDED to afford Lana an opportunity to apply for attorney's fees and costs.

---

**14.** *See Stone v. Stone,* 647 P.2d 582, 587 (Alaska 1982) (holding that where disposition on appeal established husband as the prevailing party, award of attorney's fees to wife was properly vacated and remanded to afford husband an opportunity to seek an award of attorney's fees).