NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

EDWIN FRANCIS PARSON,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12024
Trial Court No. 4FA-13-3054 CR

O P I N I O N

No. 2569 — September 22, 2017

Appeal from the District Court, Fourth Judicial District, Fairbanks, Benjamin Seekins, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for the Appellant. Patricia L. Haines, Assistant District Attorney, Fairbanks, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Coats, Senior Judge,[*] and Suddock, Superior Court Judge.[**]

Senior Judge COATS.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

[**] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Edwin Francis Parson was convicted of fourth-degree assault[1] for striking and injuring his wife. Parson requested a suspended imposition of sentence (SIS), but he was instead sentenced to 60 days with 60 days suspended. He now appeals the district court's denial of his request for an SIS.

The State asserts that Parson has no right to appeal the denial of his request for an SIS, and that this Court does not have jurisdiction to hear Parson's appeal, because Parson's active (*i.e.*, unsuspended) term of imprisonment does not exceed 120 days.[2]

For the reasons explained in this decision, we conclude that we have jurisdiction to hear this appeal. We also conclude that the district court was not clearly mistaken when it denied Parson's request for an SIS. We therefore affirm Parson's sentence.

*This Court has jurisdiction to hear Parson's appeal*

As just explained, Parson was sentenced to 60 days with all 60 suspended. The State argues that under AS 12.55.120(a) and Alaska Appellate Rule 215(a)(1), Parson has no right to appeal his misdemeanor sentence, and this Court has no jurisdiction to resolve his appeal, because Parson was sentenced to less than 120 days to serve. In fact, Parson was not sentenced to serve any time, because all of his imposed jail time was suspended.

Our jurisdiction to hear misdemeanor sentence appeals is established by AS 22.07.020(c). This statute provides in pertinent part that we have jurisdiction to

---

[1] AS 11.41.230(a)(1).

[2] *See* Alaska Appellate Rule 215(a)(1).

review "the final decision of the district court on a sentence imposed by it if the sentence exceeds 120 days of unsuspended incarceration for a misdemeanor offense."

But recently, in *Maguire v. State*, we reaffirmed the position we earlier had taken in *Allen v. Anchorage*: we have jurisdiction to review "non-term-of-imprisonment sentence appeals (*e.g.*, appeals challenging probation conditions, fines, forfeitures, and license revocations)" regardless of whether the defendant's active term of imprisonment exceeds 120 days.[3] We conclude that a challenge to a sentencing court's denial of an SIS falls within this same category.

One important reason why an SIS is a "non-term-of-imprisonment" aspect of a defendant's sentence is that an SIS gives the defendant the opportunity, regardless of the length of the sentence imposed, to have the conviction set aside if the defendant successfully completes their SIS probation.[4] As we have observed, because of this opportunity, an SIS is "a unique disposition."[5] We have also observed that in appeals challenging probation conditions, fines, forfeitures, and license revocations, we are "more likely [than the supreme court] to be familiar with the sentences imposed in criminal cases across the State" and to recognize when a sentencing court has erred with regard to those issues.[6] We are similarly more likely to be able to recognize when a sentencing court has erroneously denied or granted a suspended imposition of sentence.

---

[3] *Maguire v. State*, 390 P.3d 1175, 1177 (Alaska App. 2017) (quoting *Allen v. Anchorage*, 168 P.3d 890, 894 (Alaska App. 2007)).

[4] AS 12.55.085(d).

[5] *State v. Huletz*, 838 P.2d 1257, 1259 (Alaska App. 1992) ("A suspended imposition of sentence is a unique disposition: by providing for the eventual set-aside of a conviction, a suspended imposition of sentence offers the offender an incentive for reform and an opportunity to start anew with a clean slate."). *See also* AS 12.55.085(d).

[6] *Maguire*, 390 P.3d at 1178.

We therefore conclude that we have jurisdiction over appeals challenging a sentencing court's decision to deny a request for an SIS, regardless of the length of the imprisonment imposed.

*Background of Parson's assault on his wife*

Ann Parson, Parson's wife and the victim in this case, testified that at the time of the assault, she and Parson had been married for 26 years and had three children. According to Ms. Parson, in October 2013, Parson left home for about a week without telling his family his whereabouts. When he returned home, he was "extremely angry" and "just radiating tenseness." The couple's eighteen-year-old son (one of two children still living at home) testified that his father's anger on the day of the assault was a "ten" on a scale of one to ten.

Just before the assault, Parson was in the couple's bedroom. When Ms. Parson came into the bedroom to ask for the remote control to the family's television, Parson angrily threw the remote at her. The remote just missed Ms. Parson's head, so close that it passed through her hair. Parson then jumped off the bed where he had been lying, grabbed a game console, and threw the console, "cords and all," down the hall toward the living room. The couple's son was in the living room at the time, and he testified that the console almost hit him.

Right after Parson threw the game console, he left the bedroom, went to the living room and attempted to destroy the family television, which he described as "the source of evil" in the household. Ms. Parson followed Parson to the living room because she was certain that Parson was "going to start smashing and throwing things." When Ms. Parson tried to prevent Parson from destroying the television, their argument escalated.

Parson called her a bitch, he referred to her co-workers in derogatory terms, and he then accused her of turning their children against him. (Ms. Parson worked in the intake unit of the Office of Children's Services.)

During the struggle over the television, the couple's son stepped between his parents. The son tried to calm Parson and to get him to move away from Ms. Parson. But when the son stepped away from his parents, Parson "slammed" Ms. Parson in the chest, knocking her against the stone fireplace. Ms. Parson hit the fireplace and fell to the floor. The son testified that Parson's blow was "pretty hard," and that the son was concerned that Ms. Parson had been seriously hurt.

As a result of this assault, Ms. Parson suffered a badly sprained ankle, an abrasion on her arm, and a cut on the little finger of her right hand.

When Ms. Parson and the couple's two children attempted to leave, they discovered that Parson had disabled the family vehicles. Forced to leave the area on foot, Ms. Parson and the children went to a neighbor's house, where they arranged for transportation to a place where they could spend the night.

Ms. Parson later testified that this was not the first time that Parson had assaulted her — that it was normal for Parson to engage in physical altercations, and that Parson had destroyed other property in the past. This incident was, however, the first time she reported an assault to law enforcement.

Ms. Parson told the sentencing judge that Parson had once been an easy-going person who got along well with her and their children. But she explained that Parson's personality had changed dramatically — that he had become an "unhappy, mean, miserable person" who had quit work and had isolated himself. According to his wife, Parson had become obsessed with the radio and TV news, and he did not want to go back to work "because of the evils in the world." Ms. Parson also stated that Parson blamed her "100 percent for everything that's happened."

Ms. Parson also told the sentencing judge that Parson continued to be a threatening presence in her life despite her obtaining a restraining order. Parson had told her that he was "finding it increasingly difficult to continue following the restraining order." Parson declared that he "often thinks about violating it, and [that he] understands why so many people break their orders."

At sentencing, Parson refused to take responsibility for the assault. He agreed that he and his wife had engaged in an argument on the evening in question, but he told the judge that he believed his wife's injuries "occurred elsewhere." It bothered Parson that "it didn't come to light where [his wife] received those injuries."

The sentencing judge, District Court Judge Benjamin Seekins, rejected Parson's request for an SIS. Instead, the judge imposed a sentence of 60 days of imprisonment with all 60 days suspended, and 2 years of probation.

*Judge Seekins was not clearly mistaken to reject Parson's request for an SIS*

Parson claims that Judge Seekins provided only a "meager and insufficient explanation" for his decision to deny Parson's request for an SIS, and that the judge was clearly mistaken not to have given Parson an SIS. Parson argues that his offense was "decidedly less severe" than "typical" fourth-degree assaults, and he further argues that he is a deserving offender who had never been in any legal trouble before this assault.

But Judge Seekins found, based on Parson's conduct as a whole, that the facts of Parson's case were "a bit more severe than most [assaults]." The judge explained that Parson exhibited "the classic control cycle behaviors ... of a domestic violence offense." He found that Parson's conduct in this assault was "a little bit above" the more common conduct in domestic violence assaults. Consequently, Judge Seekins ruled that an SIS was not appropriate under the facts of Parson's case.

Whether to impose a suspended imposition of sentence in a given case is left to the discretion of the sentencing court.[7] The pertinent portion of AS 12.55.085(a) declares that "if it appears that there are circumstances in mitigation of the punishment, or that the ends of justice will be served, the court may, in its discretion, suspend the imposition of sentence[.]"

Although Parson had no prior convictions of any kind, he was a mature offender (47 years old when he committed this offense), and his offense was a violent crime — a physical assault that resulted in multiple injuries to his wife. Moreover, Ms. Parson stated at sentencing that even though this was the first time she had reported one of Parson's assaults to the police, this was not the first time Parson had assaulted her or had destroyed property in anger.

Parson physically assaulted his wife in the presence of their teenage son. And prior to the assault, Parson disabled both of the family vehicles — the vehicles that his wife and children would try to use later that evening when they felt threatened by Parson and needed to leave.

Additionally, Parson continued to be a threatening presence despite a restraining order. According to Ms. Parson, her husband told her that he was finding it "increasingly difficult" to adhere to the terms of the restraining order, that he often thought about violating it, and that he understood "why so many people break their orders."

Finally, both at trial and at sentencing, Parson refused to take responsibility for the assault. He asserted that his wife had received her injuries elsewhere, and he essentially claimed that his wife was lying about the events of that evening.

---

[7] *Nattrass v. State*, 554 P.2d 399, 401 (Alaska 1976) (citing AS 12.55.085(a)). *See also Parrott v. Anchorage*, 69 P.3d 1, 6 (Alaska App. 2003).

Based on these circumstances, we conclude that Judge Seekins was not clearly mistaken when he denied Parson's request for a suspended imposition of sentence.

*Conclusion*

The judgment of the district court is AFFIRMED.